[No. 44866. En Banc. June 1, 1978.]

HELEN H. WHITNEY, *Petitioner,* v. SEATTLE–FIRST NATIONAL BANK, ET AL, *Respondents.*

*George F. Velikanje* (of *Velikanje, Moore & Shore*), for petitioner.

*Harry Hazel,* for respondent Seattle–First National Bank.

*James S. Scott* (of *Smith & Scott*), for respondents Whitney.

UTTER, J.—Helen Whitney brought an action to rescind an agreement executed contemporaneously with joint wills made between her and her deceased husband. By the terms of the wills, if Mrs. Whitney predeceased her husband, all of her property would go to him. If he predeceased her, however, all her property, including her community share

of the property, would be placed into an irrevocable trust, along with that of her husband. The Court of Appeals in *Whitney v. Seattle–First Nat'l Bank,* 16 Wn. App. 905, 560 P.2d 360 (1977), affirmed an order dismissing her action. We likewise affirm the order of the trial court.

On appeal to this court, counsel does not challenge the adequacy of the record to support the findings of fact entered by the trial court.[1] Conflicting testimony established that petitioner was aware of the total estate and in fact had petitioned for dissolution of the marriage in April 1972, and indicated that estate to then be $400,000. Counsel for the couple testified that he explained the will and the agreement to Mrs. Whitney at the time she signed the documents.

---

[1]The following material, set forth in quotation marks, is taken from the Court of Appeals opinion at pages 905–07:

"Mrs. Whitney and the late Harrell B. Whitney were married October 27, 1962; at that time they were of modest means. Two children were born of this marriage. Largely due to Mr. Whitney's business acumen, their economic holdings increased until at the time of his death on April 25, 1973, the assets in his estate exceeded half a million dollars.

"On January 11, 1971, the parties executed their respective wills and the agreement which Mrs. Whitney sought to have the court rescind. The effect of the wills and the agreement was different, depending on which of the parties died first.

"If Mrs. Whitney predeceased Mr. Whitney, the wills and the agreement provided that all of the property would go to Mr. Whitney. Neither document made any provision for Mrs. Whitney's children by a prior marriage. Mrs. Whitney testified that her husband had assured her that if she predeceased him, he would make ample provision for these children.

"If Mr. Whitney predeceased her, the effect of the documents was that all of their property, including her community share, was put into an irrevocable trust created by Mr. Whitney's will, with the respondent bank as trustee. The trust made ample provision for her and the children of this marriage. The trustee was directed to provide the necessary monies first from trust income and, if that was insufficient, then from Mrs. Whitney's share of the trust res, and upon the expiration of that, then from Mr. Whitney's share. In addition, Mrs. Whitney had the power of appointment over her share of the res.

"Mrs. Whitney contends that it was not until several months after her husband's death that she discovered the trust was irrevocable and that she was unable to have any control over her community share without the consent of the trustee. It is undisputed that both the wills and the agreement were executed by the parties in their lawyer's office with the attendant witnesses on the date set forth thereon. The Whitneys were contemplating a 3–week vacation in Hawaii and

Counsel for petitioner has asked this court to clarify whether, under the circumstances here presented, petitioner was required to be advised of her right to independent counsel prior to executing a document by which she irrevocably waived her right to control of half of the community property. In considering this question, we turn to the prior decisions of this court in cases involving agreements between spouses or prospective spouses.

The first case in which this court had an opportunity to discuss the need for independent advice of counsel in prenuptial agreements was *Hamlin v. Merlino*, 44 Wn.2d 851, 272 P.2d 125 (1954). The agreement in that case did not, on its face, contain a fair and reasonable provision for the wife. The court in discussing the necessity for independent advice, observed at page 864:

> On the question of adequacy of consideration for such a contract, it is stated in Lindey, Separation Agreements and Ante–Nuptial Contracts (Rev. ed., 1953) 794, 798, § 90:
>
> "To render an ante–nuptial agreement valid, there must be a fair and reasonable provision therein for the wife, or—in the absence of such provision—there must be full and frank disclosure to her of the husband's worth before she signs the agreement, and she must sign freely and voluntarily, on competent independent advice, and with full knowledge of her rights. . . .
>
> "Parties to an ante–nuptial agreement do not deal at arm's length with each other. Their relationship is one of mutual trust and confidence. They must exercise the highest degree of good faith, candor and sincerity in all matters bearing on the proposed agreement."

---

wanted to have their affairs in order. Mrs. Whitney testified that her purpose in executing the wills and agreement at that time was to insure proper guardianship for the children in the event something should happen to the Whitneys during the vacation.

"The challenged findings reflect that: prior to the execution of the documents the Whitneys met with their lawyer and discussed their assets and a general estate plan; on the date of execution, the attorney explained the documents and their legal significance to the Whitneys; and lastly, the estate plans were neither inadequate, unfair, nor provided 'a detriment disproportionate to the benefits' insofar as they relate to Mrs. Whitney."

The newest version of Lindey also contains these statements relied upon in *Hamlin*. *See* 2 A. Lindey, *Separation Agreements and Ante–Nuptial Contracts* § 90, at 36, 41 (1977).

This holding is in agreement with the general rule that independent advice is only one factor to be considered in the analysis of the overall transaction.

> A clear and important distinction certainly exists between saying that in particular circumstances a transaction could not be supported in the absence of independent advice, and saying that a general rule of equity exists which makes independent advice indispensable to the validity of transactions between persons occupying a fiduciary relationship.
>
> Where it is plainly shown that a transaction was fair and free from objectionable influence, and especially where the person supposed to have been at a disadvantage is shown to have been of strong and independent mind and in a position to form an intelligent judgment, a requirement that in addition he must have had independent advice "would seem to be arbitrary and unnecessary."

(Footnotes omitted.) *Independent Advice as Essential to Validity of Transaction Between Persons Occupying a Confidential or Fiduciary Relationship*, Annot., 123 A.L.R. 1505, 1512–13 (1939). *See also McFerron v. Trask,* 3 Ore. App. 111, 472 P.2d 847 (1971).

Two cases have discussed the holding in *Hamlin, Friedlander v. Friedlander,* 80 Wn.2d 293, 494 P.2d 208 (1972) and *In re Marriage of Hadley,* 88 Wn.2d 649, 565 P.2d 790 (1977). In *Friedlander,* at page 301, this court set aside a prenuptial contract which it found "makes provision for a wife that is disproportionate to the means of the intended husband . . ." The court, citing an update of the Lindey treatise relied upon in *Hamlin,* affirmed this court's adoption of the Lindey language. The court declared, at pages 302–03:

> This brings us to the nature of the good faith disclosure required by a prenuptial agreement. To render such an agreement valid there must be a fair and reasonable

provision for the wife, or, in the absence thereof there must be a full, frank disclosure of the future husband's property and his worth. . . . Viewed in the light of this test, we hold that plaintiff failed to sustain his burden of proof.

Further, the prospective spouse must sign the agreement freely and voluntarily on *independent advice* with full knowledge of her rights. *Hamlin v. Merlino, supra* at 864; 2 A. Lindey, § 90, at 36–38. It is clear that defendant did not have such advice prior to signing the agreement.

Thus, the court held that the agreement was unfair, and that full disclosure, complete with independent advice, had not been undertaken. Failing both tests, the agreement was voided.

In *In re Marriage of Hadley, supra,* the majority noted error was assigned to the acceptance by the trial court of a series of property status agreements as being a valid characterization of the property as community or separate. In that case both the appellant and respondent urged that the validity of the property status agreements was determined by the standards set forth in *Friedlander* and *Hamlin.* The court, in extending the *Hamlin–Friedlander* antenuptial contracts rule to these agreements, noted at page 654:

The tests are: (1) whether full disclosure has been made by respondent of the amount, character and value of the property involved, and (2) whether the agreement was entered into fully and voluntarily on independent advice and with full knowledge by the spouse of her rights. Both of these tests have been met.

As is so often the case, this statement, examined outside the factual context in which it was made, would appear to establish a rule that would require that independent counsel be sought in all cases involving the validity of agreements between spouses or prospective spouses. However, it is crucial in the *Hadley* case that there had been no finding of fact or conclusion of law declaring that the property status agreements at issue therein had made fair and reasonable provision for the wife. The fact that the trial court did not so find resulted in the application of the alternative

test, whether the agreements in *Hadley* were "voluntarily and knowingly signed." *Hadley,* at 654–55.

The dissent in *Hadley* focused in part on the question of whether Mrs. Hadley knew that the agreements would be used not only for estate planning purposes but would, or could, be used against her in the event of divorce. The dissent concentrated on the issue of whether the husband lived up to his fiduciary duty arising from a relationship of trust and confidence to make a fair and full disclosure of "'all material facts relating to the amount, character and value of the property involved . . .'" *Hadley,* at 671. The dissent likewise could not address itself to the question of the fairness of the agreements because the husband had not demonstrated their fairness to the trial court.

*Friedlander* and *Hadley* do not modify the full rule quoted from Lindey and first enunciated in this state in *Hamlin;* neither case involved agreements which were found to make fair and reasonable provisions for the wife. In contrast, the facts of the instant case reveal an agreement that the trial court found upon substantial evidence to be fair, and not disproportionate to the appellant.

Applying the principles established in *Hamlin* and *Friedlander,* we hold that the agreement in this case was properly upheld by the trial court and the Court of Appeals. Because the agreement here was fair and reasonable, and because petitioner has not shown fraud or overreaching, there is no absolute requirement that the wife have acted upon the competent, independent advice of counsel, or that she be specifically informed of her right to seek the same.

This holding is not meant to dissuade counsel from recommending that independent counsel be consulted in appropriate cases. There may be many cases where a single attorney is consulted and no question exists about the fairness or reasonableness of the agreement to both parties. The presence of advice from independent counsel is a

desirable cautionary step, however, where there is a possibility that the fairness or reasonableness of the agreement will be subject to later attack.

Judgment is affirmed.

WRIGHT, C.J., ROSELLINI, STAFFORD, HOROWITZ, DOLLIVER, and HICKS, JJ., and HENRY and PRICE, JJ. Pro Tem., concur.