[No. 52186–7.   En Banc.   December 31, 1986.]

*In the Matter of the Estate of*
ROBERT J. CRAWFORD.

*Curtis H. Coons,* for appellant.

*Shiers, Kamps, Love & Chrey,* by *Frank A. Shiers,* for respondent.

CALLOW, J.—This case involves a prenuptial agreement and a petition for an award in lieu of homestead by a wife following the death of her husband.

A prenuptial agreement is one entered into by prospec-

tive spouses *prior to marriage* but in contemplation and in consideration thereof. By it, the property rights of one or both of the prospective spouses are determined or are secured to one or both of them or to their children.

*Friedlander v. Friedlander,* 80 Wn.2d 293, 298–99, 494 P.2d 208 (1972). It is an

agreement between prospective spouses made in contemplation of marriage and to be effective upon marriage.

Uniform Premarital Agreement Act § 1(1), 9A U.L.A. 334 (Supp. 1985). The trial court denied the petition for an award in lieu of homestead concluding that the agreement appeared to be fair on its face and in its effect. We reverse the trial court.

Robert J. Crawford (hereinafter decedent) had been married once before his marriage to the petitioner Genevieve M. Crawford (hereinafter Mrs. Crawford). He had owned and operated a successful automobile dealership. His first wife died in 1968 leaving one child, Robert H. Crawford. The first wife left her interest in the property which had been owned as community property to her son, Robert H. Crawford. The present Mrs. Crawford testified that she married the decedent on December 8, 1968. She was substantially younger than he was. Three days before their marriage, the decedent and Mrs. Crawford went to the office of the decedent's attorney and executed an "Agreement" wherein arrangements were made relative to the separate property which each had acquired as the result of their previous marriages.

The Agreement specified that the decedent owned as his separate property: three parcels of land located in Bremerton, Washington, 10 shares of stock of American Motors Corporation, 110 shares of stock of Crawford Motors, Inc., household goods and furnishings located at the couple's residence in Bremerton, and a 1969 automobile. The decedent also retained complete control and use of all of the revenues, income, interest, improvements, and appreciation in the value of the listed property. The Agreement, however, did not disclose the value of the decedent's property.

Mrs. Crawford's separate property consisted only of furniture, furnishings and personal effects.

The Agreement also stated that "[t]here shall be a community of properties and gains between the contracting parties from the date of their contemplated marriage to each other, which said community of properties and gains shall embrace all future acquisitions and shall embrace only said future acquisitions". It further provided that other than such provision as was made in the Agreement for the other party, neither party would assert any claim against the estate of the other by way of inheritance, homestead allowances or family allowances. No provision was made for Mrs. Crawford upon the eventuality of death or divorce. She was not given a copy of the Agreement. They spent less than 10 minutes at the decedent's attorney's office.

On February 23, 1971, the decedent executed his will in which he nominated his son Robert H. Crawford as his personal representative. In this will he left all of his separate property to his son with provision for disposition of his property to his two grandchildren provided that his son should die first. The only provision in his will for Mrs. Crawford was the sum of $1.

Mrs. Crawford was employed for nearly 13 years during the marriage. He had retired prior to the marriage and did not work at any time during the marriage. He died May 8, 1982.

We must answer whether a spouse is bound by a prenuptial agreement signed by her in the presence of the decedent's attorney, 3 days before the marriage, when (a) no provision was made for her in the case of divorce or death; (b) she was not given a full disclosure of the value of the property of the decedent; and (c) she was not afforded an opportunity to review the agreement with the assistance of independent counsel. We must also answer whether the statute of limitations has run from the time of the execution of the premarital agreement to bar any claim by the objecting spouse that the agreement was invalid.

The prenuptial agreement in question is unfair on

its face. It made no provision for Mrs. Crawford in the event of divorce or the death of the decedent. When the effect of a prenuptial agreement is to leave the economically subservient spouse with nothing, it can only be upheld by a showing that (1) there was a full and frank disclosure of all the other spouse's property and its value and (2) the agreement was signed freely and voluntarily on competent independent advice with full knowledge of rights. *Whitney v. Seattle–First Nat'l Bank*, 90 Wn.2d 105, 579 P.2d 937 (1978). A prenuptial agreement still may be valid in the absence of a fair and reasonable provision for the less advantaged spouse if there was a full and fair disclosure of all material facts relating to the amount, character, and value of the property involved, *Friedlander*, at 302–03; *Hamlin v. Merlino*, 44 Wn.2d 851, 864, 272 P.2d 125 (1954), *and* it was entered into voluntarily with full understanding upon the advice of competent independent counsel. *Whitney v. Seattle–First Nat'l Bank, supra.* The burden of establishing these prerequisites is upon the party asserting the agreement. *Friedlander*, at 300; *Hamlin*, at 862; *In re Marriage of Cohn*, 18 Wn. App. 502, 505, 569 P.2d 79 (1977); *In re Marriage of Sanchez*, 33 Wn. App. 215, 218, 654 P.2d 702 (1982). The objective is to prevent abuse and overreaching by the dominant party. *Friedlander*, at 301. As observed by *In re Marriage of Matson*, 107 Wn.2d 479, 730 P.2d 668 (1986), (1) if the agreement makes a fair and reasonable provision for the party not seeking its enforcement, the agreement may be upheld, but, (2) if the agreement does not make a fair and reasonable provision for the economically subservient spouse, then it will not be upheld *unless* (a) there was full disclosure of the amount, character and value of the property involved and (b) it was entered into voluntarily upon the advice of independent counsel with full awareness of the economic and legal ramifications of the agreement.

There is no absolute requirement of independent counsel. *Whitney*, at 111. *Whitney*, however, did not require the advice of independent counsel because the agreement was

fair and reasonable, and there was no showing of fraud or overreaching. Here the agreement was patently unreasonable. Independent counsel was required.

A clear and important distinction certainly exists between saying that in particular circumstances a transaction could not be supported in the absence of independent advice, and saying that a general rule of equity exists which makes independent advice indispensable to the validity of transactions between persons occupying a fiduciary relationship.

Where it is plainly shown that a transaction was fair and free from objectionable influence, and especially where the person supposed to have been at a disadvantage is shown to have been of strong and independent mind and in a position to form an intelligent judgment, a requirement that in addition he must have had independent advice "would seem to be arbitrary and unnecessary."

(Footnotes omitted.) *Whitney,* at 109 (quoting Annot., *Independent Advice as Essential to Validity of Transaction Between Persons Occupying a Confidential or Fiduciary Relationship,* 123 A.L.R. 1505, 1512–13 (1939)).

"Parties to an [prenuptial] agreement do not deal at arm's length with each other. Their relationship is one of mutual trust and confidence. They must exercise the highest degree of good faith, candor and sincerity in all matters bearing on the proposed agreement."

*Whitney,* at 108 (quoting *Hamlin v. Merlino,* at 864).

Applying these considerations to the circumstances, we find: (1) that Mrs. Crawford was unaware that an agreement had been drafted and was first advised of its existence on her arrival at the office of the decedent's attorney; (2) the decedent's attorney had drafted the agreement and the decedent was in the dominant bargaining position; (3) the agreement did not disclose the value of the decedent's property; (4) Mrs. Crawford spent less than 10 minutes at the attorney's office; (5) the agreement was first seen and signed only 3 days before the wedding; (6) Mrs. Crawford indicated that she did not understand the agreement; (7) she was not given a copy of the agreement; (8) she did not

discuss the document with independent counsel until after she had discovered that she had been effectively disinherited; and (9) she had not seen the agreement from the date it was signed in 1968 until a copy was demanded by her present counsel.

Where an agreement attempts to eliminate or restrict property rights of a member of the marital community, it must be scrupulously examined for fairness. While the Uniform Premarital Agreement Act, 9A U.L.A. 333 (Supp. 1985) has not been adopted by our Legislature, the considerations set forth in section 6 thereof cogently express many of the same concerns that have been expressed in our cases, as follows:

(a) A prenuptial agreement is not enforceable if the party against whom enforcement is sought proves that:

(1) that party did not execute the agreement voluntarily; or

(2) the agreement was unconscionable when it was executed and, before execution of the agreement, that party:

(i) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

(ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

(iii) did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.

We find the agreement invalid and void because of the grossly inequitable distribution of property and the circumstances surrounding the execution of the agreement.

*Friedlander v. Friedlander, supra,* found the prenuptial agreement there in issue void under similar circumstances. In *Friedlander* the husband's attorney had drafted the prenuptial agreement, the agreement was signed only a few days before the wedding, the couple was married a substantial period of years, the general effect and structure of the agreement was unfair leaving the economically subser-

vient spouse without a reasonable provision for support or otherwise provided for, the wife had not received independent legal advice, and there was no disclosure made of the nature and value of the property of the economically dominant spouse. Under such circumstances, this agreement is void, as was that before the court in *Friedlander.*

■ The respondent, the personal representative of the estate asserts the defense of the statute of limitations. The estate maintains that the action accrues at the moment of the execution of the prenuptial agreement. Mrs. Crawford maintains that the action did not accrue until the prenuptial agreement was asserted. The prenuptial agreement is a written contract subject to the provisions of RCW 4.16.040 requiring that actions upon a contract in writing or liability arising out of a written agreement must be commenced within 6 years. The 6–year period starts to run at the time that there is an assertion of rights under the agreement or an attempt to reform it. *See Chebalgoity v. Branum,* 16 Wn.2d 251, 133 P.2d 288 (1943). There can be no running of the statute of limitations during marriage. The confidential relationship of the parties excuses the subservient spouse in not suspecting or discovering an inequity exercised by the other in a prenuptial agreement. *Morrish v. Morrish,* 262 Pa. 192, 105 A. 83 (1918).

We find the appropriate rule expressed in section 8 of the Uniform Premarital Agreement Act which states:

> Any statute of limitations applicable to an action asserting a claim for relief under a premarital agreement is tolled during the marriage of the parties to the agreement. However, equitable defenses limiting the time for enforcement, including laches and estoppel, are available to either party.

Were the parties to a prenuptial agreement shackled to a holding that the statute of limitations began to run from the date of the signing of the agreement, the result would lead to the disruption of marriages and compel often useless litigation to test the validity of the agreement. We decline to adopt such a rule.

We are cited to *Morgan v. Morgan,* 10 Wash. 99, 38 P. 1054 (1894). In that case the husband had separated from the wife and moved to the state of Washington in 1879. The husband, shortly after he had moved to Spokane, Washington, had purchased real property which had increased in value to a worth of $80,000. Thereafter the wife obtained a divorce in Oregon in 1888. She also commenced a divorce action in Spokane County seeking a Washington divorce and part of the property the husband had acquired. She abandoned the Spokane action and pursued the Oregon divorce which valued the Spokane property at only $25,000. In 1888 the husband acquired a quitclaim deed to the property from the wife and in 1892 she brought another action seeking to set the quitclaim deed aside on the ground of fraud. The husband asserted the 3–year statute of limitations as having run from the time of the discovery of the fraud. The opinion upholds the statute of limitations as a bar, the statute running from the date of the discovery of the fraud. The *Morgan* case does not conflict with our holding that the statute of limitations does not run on the enforcement of or a challenge to a prenuptial agreement during the marriage since a spouse is not expected to seek or discover fraud by the other spouse during marriage.

Likewise *Peste v. Peste,* 1 Wn. App. 19, 459 P.2d 70 (1969) involved an action commenced following the entry of the decree of divorce seeking to set aside the decree on the basis of fraud some 7 years after its entry. The trial court had found that the wife had freely and voluntarily entered into the property settlement agreement, had waived her interest in the community property without there being any fraud by the husband, duress or any advantage taken of her. The 3–year statute of limitations was held to bar the suit to set aside the decree of divorce. The circumstances in *Peste* as in *Morgan* involve actions commenced following the entry of a decree of divorce seeking to set aside allegedly fraudulently obtained results achieved by a husband concurrently with or as part of the divorce proceedings.

Neither case holds that the statute of limitations runs during marriage to preclude a challenge to the validity of a prenuptial agreement when its terms are asserted as controlling.

We hold that until a spouse asserts rights under a prenuptial agreement during a dissolution action the statute of limitations is tolled. We also hold that when the provisions of a prenuptial agreement are claimed to control the rights of the surviving spouse following the death of the other, the statute of limitations has been tolled during the lifetime of the decedent while married to the surviving party.

The personal representative also asserts that the wife should be barred by laches from challenging the prenuptial agreement. The failure to attack a contract for a period of time does not constitute laches. There must also be injury resulting to one party from the other's delay in order for laches to bar the challenge to the prenuptial agreement. *Jones v. McGonigle,* 327 Mo. 457, 37 S.W.2d 892 (1931). *In re Estate of Flannery,* 315 Pa. 576, 173 A. 303 (1934) involved the repudiation by the survivor of a prenuptial agreement after a 14-year marriage where the agreement eliminated all rights of the wife in the decedent's estate. It was held that laches could not prevail as a defense to the survivor's challenge since the economically subservient spouse could not be expected to challenge the dominant spouse during his lifetime. By adopting the rule of the *Flannery* case we do not wish to encourage post-death challenges to prenuptial agreements. They are valid and binding if entered into fairly, freely and intelligently under the criteria we have set forth. *In re Marriage of Matson, supra.* However, the passage of time during a marriage, standing alone, will not support laches as a defense to a challenge to an agreement.

In addition the considerations which avoid leaving a surviving spouse destitute are served by upholding the award in lieu of homestead. The time limit for filing a petition for an award in lieu of homestead is addressed by RCW 11.52-.010, which reads as follows:

> If it is made to appear to the satisfaction of the court that no homestead has been claimed in the manner provided by law, either prior or subsequent to the death of the person whose estate is being administered, then the court, . . . upon petition for that purpose, shall award and set off to the surviving spouse, if any, property of the estate, either community or separate, not exceeding the value of twenty–five thousand dollars at the time of death, . . . *provided that the court shall have no jurisdiction to make such award unless the petition therefor is filed with the clerk within six years from the date of the death of the person whose estate is being administered.*

(Italics ours.) Mrs. Crawford's petition was filed within 6 years of the date of the death of the decedent. He died May 8, 1982, and Mrs. Crawford's petition for an order setting aside property in lieu of homestead was filed with the Kitsap County clerk on June 17, 1983.

"Awards in lieu of homestead are *favored by law* and the statutes permitting them should be liberally construed in favor of those who are entitled to benefit from the award." (Italics ours.) *See In re Estate of Dillon,* 12 Wn. App. 804, 805, 532 P.2d 1189 (1975). The law favors awards in lieu of homestead as a matter of right for the protection of the surviving spouse and as a measure of fairness.

The prenuptial agreement is set aside and is declared void. The petitioner, Mrs. Crawford, is entitled to an award in lieu of homestead pursuant to the provisions of RCW 11.02.070 and chapter 11.52 of the Revised Code of Washington. The denial of the petition for award in lieu of homestead is reversed and the cause is remanded to the trial court for the entry of an order in the probate making such an award to the petitioner.

DOLLIVER, C.J., UTTER, DORE, PEARSON, ANDERSEN, GOODLOE, and DURHAM, JJ., and WIELAND, J. Pro Tem., concur.