IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Estate of: | ) | No. 38474-8-III |
| | ) | |
| MARILYN SUE HEIN, Deceased. | ) | |
| | ) | |
| JOHN HEIN, individually and as Personal | ) | |
| Representative of the Estate of Marilyn | ) | |
| Sue Hein, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| VAUGHN EDWARD START and | ) | |
| "JANE DOE" START, husband and wife; | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| ROBERT W. MORGAN D/B/A | ) | |
| EDWARD JONES, EDWARD D. JONES | ) | |
| AND CO., LP, a foreign limited | ) | |
| partnership, | ) | |
| | ) | |
| Defendant. | ) | |

LAWRENCE-BERREY, J. — John Hein, the surviving spouse of Marilyn

Sue Hein, appeals the trial court's order reducing his presumptive basic award under

RCW 11.54.020 from $125,000 to $1,000. We reverse, remand for further consideration,

and retain jurisdiction for the limited purpose of expediting any subsequent appeal.

FACTS

The facts, both undisputed and disputed, remain the same from John Hein's

previous appeal.  Many of these facts were recited in our previously published opinion,

*In re Estate of Hein*, 17 Wn. App. 2d 243, 485 P.3d 953 (2021) (*Hein* I).

Around 2004, Marilyn Hein was diagnosed with breast cancer.  She died on

September 26, 2018, following an extended battle with the disease.  She was survived by

Mr. Hein, her spouse of more than 30 years and who she lived with for 38 years.  She was

also survived by her son, Vaughn Start.  Mr. Start is Ms. Hein's son from a prior

marriage.

Around 1988, the Heins bought a home and property in Bothell, Washington,

where they ran a horse boarding and training business.  In 2013, Ms. Hein executed her

last will and testament naming her son as personal representative of her estate and sole

beneficiary.  The will expressly left nothing to her husband.

By early 2017, Ms. Hein's cancer and Mr. Hein's health problems prompted the

couple to sell their Bothell property and move to Moses Lake.  They evenly divided the

approximately $420,000 sale proceeds into two Edward Jones investment accounts, one in

Mr. Hein's name and the other in Ms. Hein's name.  Ms. Hein named her son as the

primary beneficiary of her account. Mr. Hein named his sister as the primary beneficiary of his account.

Mr. Hein used the funds in his Edward Jones account to purchase the couple a mobile home and a car. After the couple moved out of the Bothell property, Ms. Hein traveled to Arizona where she stayed with a cousin for about one month, before returning to live with her husband in Moses Lake.

Around the time of the Bothell property sale, Ms. Hein filed a petition for divorce. Her dissolution petition stated that her marriage to Mr. Hein was "irretrievably broken" and that the two were living in separate households. Clerk's Papers (CP) at 205. She checked a box on the petition indicating that the couple's property had already been divided fairly. Then, one year later, Ms. Hein dismissed her petition.

The parties advanced competing characterizations of the divorce filing and the reasons Ms. Hein dismissed the petition. According to Mr. Hein, the divorce was a strategic move to shield the money from Medicaid and to make it look like Ms. Hein had limited assets in case she needed to get affordable housing if her condition deteriorated. According to the son, the divorce filing was the result of his mother's unhappiness, yet she dismissed it because of her deteriorating condition, her poor financial position, and Mr. Hein's uncooperativeness.

3

In March 2018, Ms. Hein's cancer progressed and doctors believed she would soon die. She began receiving in-home hospice care two to three times per week.

In July 2018, Ms. Hein changed the beneficiary of her Edward Jones account to her husband. Mr. Hein testified that he drove his wife to the Moses Lake Edward Jones office at her request. He believed she wanted to make the change because her son would not visit her or permit her to visit her grandchildren.

Ten days after the beneficiary change, Mr. Start drove to Moses Lake to see his mother. He drove her to a hospital in Issaquah, closer to his home, where she received cancer treatment.

The parties characterized the circumstances around her move differently. Mr. Hein testified that Mr. Start appeared at their home and said he was going to take his mother to visit her grandchildren. Mr. Hein did not recognize his stepson because they had not seen each other in over 12 years. Mr. Hein believed his stepson's motive for the move was to have his mother reinstate him as the beneficiary of her account.

Mr. Start, by contrast, explained that he drove to Moses Lake after receiving dozens of frantic calls from his mother asking him to come get her and saying that Mr. Hein would not take her to the hospital. According to Mr. Start, his mother "looked like she needed help," so he took her straight to the emergency room in Issaquah. CP at 147.

4

Days later, Ms. Hein was transferred from the hospital to a nursing home. Mr. Start petitioned on behalf of his mother and against his stepfather for a vulnerable adult protection order (VAPO). In the petition, he alleged financial and mental abuse. The court appointed a guardian ad litem (GAL) to investigate the allegations.

Meanwhile, Mr. Start arranged for an Edward Jones representative to come to the nursing home and meet with his mother in private to discuss changing the account beneficiary. At that meeting, Ms. Hein signed a new transfer on death beneficiary form naming her son as primary beneficiary. Mr. Start also signed the form as the account owner. He explained he was asked to sign the form because he was the designee on his mother's power of attorney.[1]

Ms. Hein died on September 26, 2018. Shortly after Ms. Hein's death, the GAL issued her report. The GAL found no evidence of abuse or neglect by Mr. Hein and no evidence of financial exploitation by either Mr. Hein or Mr. Start. The GAL recommended the VAPO be vacated and the matter dismissed without prejudice. She also recommended that the health care durable power of attorney naming Mr. Start as agent be revoked and that Mr. Hein be named instead. She did recommend that Mr. Start

---

[1] Edward Jones's transfer on death beneficiary form had a line for a spouse to sign to waive that spouse's community property interest in the account. Mr. Hein did not sign the form, so he did not waive his community interest in his wife's account.

5

remain the designee on the financial power of attorney for his mother. The report also noted that Ms. Hein told the GAL she wanted to see and speak to her husband, although she did not want to be alone with him.

The GAL perceived that Ms. Hein had affection for both her husband and her son. Writing about her interview with Ms. Hein, 15 days before her death, the GAL reported,

> Mrs. Hein looked at [me] and said, firmly, "[W]hat am I going to do?" When I asked what she meant, she stated, "Vaughn and John?" She touched [my] shoulder and patted it while saying this. . . .
>     . . . Mrs. Hein is very conflicted about this current situation. She feels caught between her husband and son who do not like each other at all and never have.

CP at 1247-48.

*Procedure*

Following Ms. Hein's death, her son filed a copy of her will with the King County Superior Court but did not initiate probate. It was his view that his mother's estate consisted mostly of nonprobate assets and that probate would be a waste of time and money. A few weeks later, Mr. Hein filed a copy of his wife's will with the Grant County Superior Court and petitioned to admit it to probate and appoint him as personal representative. The court granted Mr. Hein's petition.

Several months later, Mr. Hein petitioned seeking relief under TEDRA[2] against his

stepson and his wife. Mr. Hein later filed an amended TEDRA petition seeking a basic

award from his wife's share of the couple's community property and an increase of the

presumptive amount.

At some point in the litigation, the trial court decided it would be more efficient to

treat all of the property, including both Edward Jones accounts, as community property

subject to probate rather than litigate some of the disputed issues. It did so despite Ms.

Hein having likely waived her community property interest in her husband's account by

signing the designation of beneficiary form.[3] The parties' most recent briefing values the

community property at between $360,000 and $370,000.

The court held a hearing on the amended petition where Mr. Hein testified

extensively about his relationship with his wife, their business, her illness, and the events

leading up to her admission into the nursing home.

Running short on time, the court requested that the parties submit briefing for any

additional arguments not addressed at the hearing, noting that chapter 11.96A RCW

---

[2] The Trust and Estate Dispute Resolution Act, RCW 11.96A.090.

[3] Neither party assigned error to this decision. Because Mr. Hein did not waive his community interest in his wife's account while his wife presumably did waive her community interest, the trial court's decision to treat *both* accounts as community property arguably results in a windfall to Mr. Start.

allows for testimony to be provided to the court via affidavit. Mr. Start and his wife

complied and submitted a memorandum opposing the requested award and declarations

containing their own characterizations of the Heins' relationship, Ms. Hein's illness, Ms.

Hein's admission to the hospital and nursing home, and the Edward Jones accounts.

The trial court ruled that Mr. Hein was not entitled to any basic award. The court

concluded that Mr. Hein had not proved by clear, cogent, and convincing evidence a need

for any award. Mr. Hein appealed.

*Hein* I

On appeal, we determined that the trial court based its denial of the basic award on

the wrong legal standard and the wrong burden of proof. *Hein* I, 17 Wn. App. 2d at 261.

We explained that RCW 11.54.050(2)(a) permitted the trial court to decrease the

presumptive basic award if the decedent is survived by children who are not children of

the spouse. *Id.* at 255. But to decrease the presumptive award, the trial court was

required to consider certain statutory factors, i.e., the needs of the claimant and the

intentions of the decedent. *Id.* (citing RCW 11.54.040(2), (3)). We remanded for the trial

court to exercise its "broad discretion" in light of our instructions. *Id.* at 261.

*Remand*

On remand, the trial court held a review hearing where both parties argued about the statutory factors. The court later issued its letter decision, which reflects its analysis of the facts, Mr. Hein's needs, and Ms. Hein's intent.

With respect to Mr. Hein's need, the trial court found, "[Mr. Hein] has not shown that he has a need beyond [his share of the community property,] which would necessarily reduce Mr. Start's inheritance further." CP at 1099. With respect to Ms. Hein's intent, the trial court found, "[T]he Court determines that at the time of her death [Ms. Hein] wanted Mr. Start to receive all the money in her possession and for her husband to receive nothing more than he had received after the couple had sold their business in Bothell." CP at 1099. Exercising its discretion, the trial court reduced Mr. Hein's presumptive award from $125,000 to $1,000.

At the presentation hearing, the court declined to sign either parties' proposed findings of fact, but instead attached its letter decision to Mr. Hein's proposed order. To fairly characterize the court's findings and conclusions, we attach the court's letter decision as an appendix to this opinion.

Mr. Hein timely appealed the trial court's award.

9

ANALYSIS

STANDARD OF REVIEW

As we noted in *Hein* I, the amount of the basic award "shall be" the amount of the homestead exemption unless decreased in accordance with RCW 11.54.050. 17 Wn. App. 2d at 254-55 (citing RCW 11.54.020). We observed that "'[t]he law favors awards in lieu of homestead as a matter of right for the protection of the surviving spouse and as a measure of fairness.'" 17 Wn. App. 2d at 258-59 (quoting *In re Estate of Garwood*, 109 Wn. App. 811, 814, 38 P.3d 362 (2002) (citing *In re Estate of Crawford*, 107 Wn.2d 493, 502, 730 P.2d 675 (1986)). We pointed out that "[p]rior case law teaches that 'the homestead award is strongly favored as a family protection device. It is based on what is perceived to be sound public policy, and thus it is given a "high priority" and is liberally construed to effectuate that policy, in favor of granting the award wherever possible.'" *Id.* at 259 (quoting MARK REUTLINGER & WILLIAM C. OLTMAN, WASHINGTON LAW OF WILLS AND INTESTATE SUCCESSION 234-35 (1985) (citing cases)).

Accordingly, while the trial court has broad discretion to set the basic award, a reduction from the basic award must be based on reasons arrived at in the context of existing law, the undisputed facts, and those facts found by the trial court that are

supported by substantial evidence. *See In re Marriage of Littlefield*, 133 Wn.2d 39, 47,

940 P.2d 1362 (1997).

CHALLENGED FINDINGS

Mr. Hein challenges the trial court's factual findings with respect to his needs and

his wife's intent. Because the trial court was required to make findings based on disputed

evidence and also because some of the evidence came in the form of live testimony, we

review the trial court's factual findings for substantial evidence. *Dolan v. King County*,

172 Wn.2d 299, 310, 258 P.3d 20 (2011). Substantial evidence is that quantum of

evidence sufficient to persuade a rational, fair-minded person the premise is true.

*Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).

### *Mr. Hein's needs*

Mr. Hein initially complains that the trial court erred in comparing his needs with

his stepson's needs. We agree to some extent. RCW 11.54.040(2) does not expressly

permit the trial court to weigh the needs between the claimant and an adult child of the

deceased. RCW 11.54.050(2) provides that the court shall consider whether the needs of

only a decedent's "*minor* children" with respect to basic maintenance and support are

adequately provided for, so an adult child's maintenance and support is not a statutory

concern. (Emphasis added.) However, RCW 11.54.040(2) does not provide an exclusive

11

list of considerations for the trial court to weigh. So the trial court was not precluded from considering the disparate needs, provided it also considered Mr. Hein's needs. Here, the trial court did consider Mr. Hein's needs. It found that Mr. Hein did not establish any need beyond his share of the couple's community property.

Mr. Hein then assigns error to the trial court's finding of what his available assets are. He points to the trial court's finding that "[Mr. Hein's] share of the community property [is] roughly $200,000.00, in addition to the amount he received when he and his wife sold their Bothell property . . . ." CP at 1099. No evidence in the record supports this finding. According to the parties' recent briefing, Mr. Hein's portion of community property is $180,000 to $185,000, which is one-half of the value of the total community property. Because the trial court might have misunderstood Mr. Hein's available assets, this casts some doubt on its ultimate finding that he had not shown he has needs beyond his share of the community property.

12

*Ms. Hein's intent*

Mr. Hein also assigns error to the trial court's finding of his wife's intent.

Specifically, he argues the trial court failed to consider some of the subfactors[4] that must

be weighed when determining the intent of the deceased. We only partly agree.

As to the first factor, the trial court did consider Ms. Hein's express desire in her

will, which was executed five and one-half years before her death, for her husband not to

inherit anything. Because she never changed her will, the trial court's finding that Ms.

Hein did not intend for her husband to *inherit* anything is supported by substantial

evidence. The trial court found that Ms. Hein was undoubtedly unaware that her husband

---

[4] RCW 11.54.040(3) provides:
In determining the intentions of the decedent, the court shall consider, without limitation:
    (a) Provisions made for the claimant by the decedent under the terms of the decedent's will or otherwise;
    (b) Provisions made for third parties or other entities under the decedent's will or otherwise that would be affected by an increased award;
    (c) If the claimant is the surviving spouse or surviving domestic partner, the duration and status of the marriage or . . . domestic partnership . . . ;
    (d) The effect of any award on the availability of any other resources or benefits to the claimant;
    (e) The size and nature of the decedent's estate; and
    (f) Oral or written statements made by the decedent that are otherwise admissible as evidence.
    The fact that the decedent has named beneficiaries other than the claimant as recipients of the decedent's estate is not of itself adequate to evidence such an intent as would prevent the award of an amount in excess of [$125,000].

might claim a homestead award.

With regard to the second factor, the trial court did consider Ms. Hein's express desire in her will for her son to inherit everything she had, which would amount to between $180,000 and $185,000. Again, because Ms. Hein never changed her will, the trial court's finding is supported by substantial evidence. An award to Mr. Hein would diminish Mr. Start's inheritance, potentially to $55,000 to $60,000.

The trial court did not adequately describe the third factor, the length of the couple's marriage. The trial court described the couple's 32-year marriage as "over twenty years." CP at 1100. It described their living arrangements as "not living together" at the time of Ms. Hein's death. CP at 1100. This description, while literally true, misses the point. Although Ms. Hein was in a nursing home at the time of her death, she was there at her son's direction, not her husband's. Mr. Hein had cared for his wife for several years while she battled cancer. The trial court's description of their relationship inadequately describes Ms. Hein's true feelings about her husband. Fifteen days before she died, Ms. Hein told the GAL that she wanted to see and talk to her husband, as long as another person was present, and she expressed affection both for her husband and her son. Information from the GAL has the advantage of being admissible under the dead man's statute, RCW 5.60.030, unlike some of the evidence offered by Mr. Hein, Mr.

14

Start, and Mr. Start's wife. The trial court acknowledged it would need to "whittle . . . out" evidence barred by the dead man's statute in deciding the basic award. Rep. of Proc. at 99.

The fourth factor is unimportant here. There is no evidence that an award to Mr. Hein would reduce any of his resources or benefits.

The trial court arguably weighed the fifth factor, the size and extent of the estate. It found that Mr. Hein's receipt of any basic award would decrease what Ms. Hein had intended to bequeath to her son.

The sixth factor, admissible statements made by the deceased, was not weighed by the trial court. As noted previously, Ms. Hein's statements to the GAL, soon before her death, shows that she had affection both for her husband and her son.

In all, the evidence supports some reduction of the presumed basic award of $125,000, but it does not support preserving a $179,000 to $184,000 inheritance to Mr. Start by reducing Mr. Hein's presumptive award by $124,000. We conclude the trial court abused its broad discretion by awarding Mr. Hein only $1,000.

The fact the couple was married or together nearly all of their adult lives and the fact that Mr. Hein cared for his wife for years while she battled cancer, supports substantially more than a negligible award. Mr. Hein's years of caring for his wife is a

15

proper consideration because the six factors are expressly nonexclusive.

The purpose of TEDRA is to efficiently resolve estate disputes. *See*

RCW 11.96A.020. Partly because of COVID-19 and the lack of prior judicial

construction of this new statute, resolution of this estate dispute has taken too long. For

this reason, we retain jurisdiction over this matter for the limited purpose of expediting

any subsequent appeal after the trial court reconsiders its award to Mr. Hein.

ATTORNEY FEES

Under RAP 18.1, we may grant attorney fees if the applicable law so allows.

RAP 18.1(a). In a TEDRA action, the appellate court may, in its discretion, order

costs, including reasonable attorney fees to any party, from any party, from the assets

of the estate, or from any nonprobate asset that is subject to the proceedings.

RCW 11.96A.150(1). The court may consider any and all factors that it deems to be

relevant and appropriate. RCW 11.96A.150(1). On appeal, the requesting party must

devote a section of its opening brief to request the fees or expenses. RAP 18.1(b). A

request contained in a reply brief is late and may be disregarded. *Indus. Coatings Co. v.*

*Fid. & Deposit Co. of Maryland*, 117 Wn.2d 511, 520, 817 P.2d 393 (1991).

### *Mr. Hein's request*

Here, Mr. Hein requested fees in his reply brief, but not in his opening brief. His request is therefore late. RAP 18.1(b). We deny his request for fees.

### *Mr. Start's request*

Mr. Start properly requested fees in his opening response brief. RAP 18.1(b). He advances an intransigence argument. He argues that Mr. Hein has forced litigation over issues clearly defined by Ms. Hein's will. He further argues that Mr. Hein is unhappy that his wife disinherited him and so hijacked the probate of her estate and filed the underlying TEDRA action to force litigation. We are unpersuaded by these arguments.

We do not agree that Mr. Hein unnecessarily forced litigation over issues defined in his wife's will. The basic award and consideration of whether to increase, decrease, divide, or deny it are based on statute and an award necessarily interferes with the distribution outlined in a decedent's will. *See* RCW 11.54.050(2)(a); *see also* RCW 11.54.040(2), (3). We do not find that Mr. Hein's arguments on appeal are frivolous or intransigent. We therefore deny Mr. Start's request for fees.

No. 38474-8-III
*Estate of Hein*

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Siddoway, C.J.                                   Staab, J.

# APPENDIX

No. 38474-8-III
*Estate of Hein*

DAVID G. ESTUDILLO, Judge, Dept. 1
JOHN D. KNODELL, Judge, Dept. 2
TYSON R. HILL, Judge, Dept. 3
TOM W. MIDDLETON, Court Commissioner

35 C Street NW
P.O. Box 37
Ephrata, WA 98823
(509) 754-2011

CRYSTAL BURNS, Court Administrator
SHAREEN LAUGHLIN, Deputy Court Administrator
LYNETTE HENSON, Jury Administrator
TOM BARTUNEK, Official Reporter

August 10, 2021

OLIVIA DUNKIN

**FILED**

AUG 10 2021

KIMBERLY A. ALLEN
GRANT COUNTY CLERK

Gerald J. Moberg
Attorney at Law
P.O. Box 130
Ephrata, WA 98823

Austin J. Nowakowski
Attorney at Law
500 Yale Avenue N., Suite 100
Seattle, WA 98109

In Re: **Estate of Hein vs. John Hein, et al**
         **Grant County Cause No. 18-4-00166-13**

The Court of Appeals has remanded this case directing the Court to consider whether it should decrease Mr. Hein's basic homestead award of $125,000.00. The Court of Appeals has already affirmed this Court's decision to deny Mr. Hein an increase. The Court has discretion to decrease that award after considering Mr. Hein's need and the intent of his deceased wife, Mrs. Marilyn Sue Hein.

This Court is called upon to balance these two factors. In determining Mr. Hein's needs, the Court will consider the resources available to him and the resources the Court reasonably expects to be available to him during the pendency of Mrs. Hein's estate. RCW 11.54.040(2).

In determining Mrs. Hein's intent, the legislature directs the Court to consider the following:

(a) Provisions made for the claimant by the decedent under the terms of the decedent's will or otherwise;

1

01098

20

(b)   Provisions made for third parties or other entities under the decedent's will or otherwise that would be affected by an increased award;

(c)   If the claimant is the surviving spouse or surviving domestic partner, the duration and status of the marriage or the state registered domestic partnership of the decedent to the claimant at the time of the decedent's death;

(d)   The effect of any award on the availability of any other resources or benefits to the claimant;

(e)   The size and nature of the decedent's estate; and

(f)   Oral or written statements made by the decedent that are otherwise admissible as evidence. RCW 11.54.040(3)

The Court begins with a basic or presumptive homestead award amount of $125,000.00. Mr. Hein's needs must be assessed in relation to his basic needs and the needs of Mrs. Hein's other family. Mr. Hein's needs are not disproportionate to those of Mr. Start. Nor are the resources available to him significantly less than those available to Mr. Start. As Mrs. Hein's surviving spouse, he will receive his share of the community property, roughly $200,000.00, in addition to the amount he received when he and his wife sold their Bothell property, divided the cash equally and opened twin Edward Jones accounts. Mr. Hein has no dependents. He has not shown that he has a need beyond what he will receive without a homestead award which would necessarily reduce Mr. Start's inheritance further.

Nor does the evidence of Mrs. Hein's intent support a homestead award. Mrs. Hein's estate was modest. In anticipation of divorce, she and her husband had separated and had already divided the bulk of their property. To the extent she was able, she had already made provisions for him at the time of her death. Further, because the parties did not ultimately divorce and because Mrs. Hein's estate is composed entirely of community property, Mr. Hein is entitled to one-half of her estate regardless of her will's provisions.

Mrs. Hein was undoubtedly unaware that her husband might claim a homestead award in spite of the written declarations of intent she left behind. Mr. Hein argues that Mrs. Hein would have wanted him to receive a homestead award because he treated her better than her son did. Mr. Start may have given his mother reason to so intend. But in spite of any inattention to her, Mrs. Hein gave repeated and explicit instructions that when she died, he was to receive everything she had the power to give. After considering the factors in RCW 11.54.040(3), the Court determines that at the time of her death she wanted Mr. Start to receive all the money in her possession and for her husband to receive nothing more than he had received after the couple had sold their business in Bothell.

Mrs. Hein expressed this intent in her will and the written instructions she gave Edward Jones when she created her investment account. She not only named her son as her sole beneficiary in her will, she also explicitly disinherited her husband. Although at one point she named her husband the beneficiary of the Edward Jones account, she renamed Mr. Start as beneficiary before she died. She knew these two legal documents would govern the disposition of her property upon her death. They are the best evidence of Mrs. Hein's intent.

2

01099

The Heins' marriage lasted over twenty years. The record indicates that although Mrs. Hein had withdrawn her dissolution petition, she and her husband were not living together as husband and wife at the time of her death. The Court concludes that the status of the Heins' marriage does not support the notion that Mrs. Hein felt any obligation to provide her husband support after her demise other than that she had already provided. Whether she intended it or not, Mr. Hein, in spite of the will's terms, will receive half of her property. Any homestead award to Mr. Hein would necessarily diminish Mrs. Hein's bequest to her son in the amount of the award.

For these reasons, the Court in its discretion after considering all the factors in RCW 11.54.040 (2) and (3) reduces Mr. Hein's homestead award to $1,000.00.

Very truly yours,

John Knodell
Judge

3

01100