# IN THE SUPREME COURT OF IOWA

No. 16–1419

Filed July 6, 2018

**IN RE THE MARRIAGE OF JODI LYNN ERPELDING AND TIMOTHY JOHN ERPELDING**

Upon the Petition of
**JODI LYNN ERPELDING,**

Appellant,

And Concerning
**TIMOTHY JOHN ERPELDING,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Kossuth County, Patrick M. Carr, Judge.

Further review applicant challenges court of appeals decision reversing district court's denial of request for attorney fees based on waiver of attorney fees in parties' premarital agreement. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED WITH INSTRUCTIONS.**

Thomas W. Lipps of Peterson & Lipps Law Firm, Algona, for appellant.

Matthew G. Sease and Christopher R. Kemp of Kemp & Sease, Des Moines, for appellee.

**HECHT, Justice.**

The parties executed a premarital agreement waiving the right to seek an award of attorney fees in the event of a dissolution of their marriage. During their subsequent dissolution proceeding, the parties litigated issues pertaining to physical custody of the two minor children, child support, spousal support, and property division. One of the parties requested an award of attorney fees arising from litigating issues of child custody, child support, and spousal support, claiming the premarital-agreement waiver of her claim for attorney fees was unenforceable because it violates public policy. The district court's decree decided all of the contested issues and denied the request for attorney fees, finding the waiver provision in the premarital agreement was enforceable. On appeal, the court of appeals reversed on the attorney fees issue, concluding the waiver provision violates public policy and is therefore unenforceable to the extent the attorney fees arise from litigation of child-related issues. On further review, we affirm the court of appeals decision on its award of attorney fees for child-related issues. We vacate the part of the court of appeals decision regarding attorney fees for spousal support. We affirm the decision of the court of appeals on all other issues. Therefore, we remand the case to the district court to determine the amount, if any, of trial attorney fees and costs the ex-wife is entitled to for the child custody, child support, and spousal support issues litigated in the dissolution matter in the district court. The court should also determine the amount of appellate attorney fees the ex-wife is entitled to for the child custody, child support, and spousal support issues.

## I. Factual and Procedural Background.

Tim and Jodi Erpelding married on December 1, 1997, in Las Vegas, Nevada. Five days before their wedding, the parties executed a premarital agreement addressing their respective property rights and interests in the event of dissolution of the marriage. The agreement generally provided that, in the event of dissolution, the parties would retain sole ownership of all assets they brought into the marriage or acquired in their individual names during the marriage. The agreement further provided

> the Parties shall have no other rights to property, interests in property, property settlement, *attorney fees and expenses* upon the filing of a petition requesting legal separation, divorce, dissolution or other judicial termination of their marriage, and upon the Court granting any such petition and thereafter.

(Emphasis added.).

After eighteen years of marriage, Jodi filed a petition for dissolution. The parties litigated issues of child custody and support, spousal support, property division, and attorney fees. The district court ordered split physical care, placing one child with each parent, and adjudicated the support and property issues in a thorough and well-written opinion. The court declined to award Jodi attorney fees, concluding "[i]n the absence of any articulated public policy of the state of Iowa, the Court thinks it does not have authority to ignore the plain language of the parties' prenuptial agreement."

Jodi appealed, Tim cross-appealed, and we transferred the case to the court of appeals. On appeal, Jodi asserted the Iowa Uniform Premarital Agreement Act (IUPAA) prohibits premarital-agreement provisions that waive the right to attorney fees arising from issues of child custody, child support, and spousal support because the IUPAA

prohibits premarital agreements from limiting the right to child and spousal support. The court of appeals reversed the district court's denial of attorney fees, holding "the provision in the Erpeldings' premarital agreement waiving [attorney] fees and costs is void and unenforceable as to child-related issues because it violates Iowa 'public policy by discouraging both parents from pursuing litigation in their child's best interests.' "[1]

Tim sought and we granted further review. "When considering an application for further review, we have discretion to review all the issues raised on appeal or in the application for further review or only a portion thereof." *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016); *accord Hills Bank & Tr. Co. v. Converse*, 772 N.W.2d 764, 770 (Iowa 2009). We exercise our discretion in this case to limit our review to the issue of premarital-agreement waivers of attorney fees concerning child custody, child support, and spousal support. Accordingly, the court of appeals decision shall be the final adjudication on all of the other issues raised by the parties in this appeal. *See In re Marriage of Mauer*, 874 N.W.2d at 106.

## II. Scope and Standards of Review.

> We review the denial of attorney fees for an abuse of discretion. We reverse the district court's ruling only when it rests on grounds that are clearly unreasonable or untenable. A ruling is clearly unreasonable or untenable when it is "not supported by substantial evidence or when it is based on an erroneous application of the law."

---

[1] The court of appeals declined to address Jodi's claim regarding attorney fees incurred from litigating issues of spousal support, concluding Jodi "provide[d] no compelling arguments to reach th[at] litigation categor[y]." We conclude Jodi did sufficiently present arguments in the district court and on appeal challenging the denial of attorney fees incurred in furtherance of her claim for spousal support, and therefore, unlike the court of appeals, we decide the question on further review.

*In re Marriage of Kimbro*, 826 N.W.2d 696, 698–99 (Iowa 2013) (citation omitted) (quoting *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012)). We review issues involving statutory interpretation for correction of errors at law. *Johnson Propane, Heating & Cooling, Inc. v. Iowa Dep't of Transp.*, 891 N.W.2d 220, 224 (Iowa 2017); *In re C.F.-H.*, 889 N.W.2d 201, 203 (Iowa 2016); *accord* Iowa R. App. P. 6.907.

**III. Analysis.**

**A. Relevant Statutory Provisions**. Under Iowa law, premarital agreements are subject to the IUPAA, codified in Iowa Code chapter 596. Iowa Code § 596.12 (2016); *In re Marriage of Shanks*, 758 N.W.2d 506, 511 (Iowa 2008). Iowa Code section 596.5 regulates the matters about which parties may contract in a premarital agreement, and provides in relevant part,

> 1. Parties to a premarital agreement may contract with respect to the following:
>
> . . . .
>
> *g.* Any other matter, including the personal rights and obligations of the parties, not in violation of public policy or a statute imposing a criminal penalty.
>
> 2. The right of a spouse or child to support shall not be adversely affected by a premarital agreement.

Iowa Code § 596.5(1)(*g*), (2).

**B. Attorney Fees for Child Support and Spousal Support.** Both the district court and court of appeals based their respective analyses on whether a premarital-agreement waiver of attorney fees concerning child support or spousal support violates public policy. *See id.* § 596.5(1)(*g*). We conclude, however, that the attorney fees issue regarding child support or spousal support can be resolved without an enunciation of Iowa's public policy on the enforceability of premarital-agreement

provisions waiving attorney fees. We rely, instead, on our well-established principles of statutory interpretation in discerning the meaning of "adversely affected" in section 596.5(2) and conclude a premarital-agreement waiver of attorney fees pertaining to child support or spousal support is unenforceable because it adversely affects a spouse's or child's right to support in contravention of section 596.5(2).

"When interpreting a statute, we seek to ascertain the legislature's intent." *Dakota, Minn. & E. R.R. v. Iowa Dist. Ct.*, 898 N.W.2d 127, 136 (Iowa 2017). We begin with the text of the statute, construing "technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, . . . according to such meaning," and all others "according to the context and the approved usage of the language." Iowa Code § 4.1(38); *accord Second Injury Fund of Iowa v. Kratzer*, 778 N.W.2d 42, 46 (Iowa 2010). After having done so, we determine whether the statute's language is ambiguous. *Rolfe State Bank v. Gunderson*, 794 N.W.2d 561, 564 (Iowa 2011).

"A statute is ambiguous 'if reasonable minds could differ or be uncertain as to the meaning of a statute.' " *Id.* (quoting *Holiday Inns Franchising, Inc. v. Branstad*, 537 N.W.2d 724, 728 (Iowa 1995)); *accord City of Waterloo v. Bainbridge*, 749 N.W.2d 245, 248 (Iowa 2008). Ambiguity may arise from the meaning of specific words used and "from the general scope and meaning of a statute when all its provisions are examined." *Rolfe State Bank*, 794 N.W.2d at 564 (quoting *Holiday Inns Franchising*, 537 N.W.2d at 728).

If the statute is unambiguous, we do not search for meaning beyond the statute's express terms. *Id.* However, if the statute is ambiguous, we consider such concepts as the "object sought to be attained"; "circumstances under which the statute was enacted";

"legislative history"; "common law or former statutory provisions, including laws upon the same or similar subjects"; and "consequences of a particular construction." Iowa Code § 4.6; *accord State v. McCullah*, 787 N.W.2d 90, 95 (Iowa 2010). Additionally, we consider the overall structure and context of the statute, *Rolfe State Bank*, 794 N.W.2d at 564, "not just isolated words or phrases," *Kline v. Southgate Prop. Mgmt., LLC*, 895 N.W.2d 429, 438 (Iowa 2017).

Tim contends a premarital-agreement provision waiving a claim for attorney fees adversely affects only the right to seek attorney fees. Put another way, he argues such a provision does not contravene section 596.5(2) because it does not inhibit a spouse's or child's right to support—it merely inhibits one party's right to seek reimbursement from the other party for the cost of pursuing such support. Conversely, Jodi contends such a waiver provision violates section 596.5(2) because, without the possibility of recovering attorney fees, a financially disadvantaged spouse may be unable to competently or adequately litigate child and spousal support claims, and thus the right to such support will be adversely affected. Because we find both interpretations of section 596.5(2) are reasonable, we conclude the statute is ambiguous. Therefore, we resort to our tools of statutory construction.

When interpreting an ambiguous statute, we consider "[t]he object sought to be attained." Iowa Code § 4.6(1). The history and circumstances surrounding the enactment of section 596.5 and the IUPAA indicate the object of section 596.5(2) is to explicitly and broadly protect the rights to child support and spousal support. *See id.* § 4.6(2), (4) (denoting reference may be made to the circumstances under which a statute was enacted and to the common law or former statutory provisions when interpreting an ambiguous statute).

We turn to the history of the right to spousal support in Iowa as a backdrop for our determination of the object or purpose of section 596.5(2). *See generally Vande Kop v. McGill*, 528 N.W.2d 609, 612–13 (Iowa 1995) (en banc) (tracing history of prohibition against waiving alimony). Under common law, an alimony waiver in a premarital agreement was considered void as against public policy. *E.g.*, *In re Marriage of Gudenkauf*, 204 N.W.2d 586, 587 (Iowa 1973); *Norris v. Norris*, 174 N.W.2d 368, 369–70 (Iowa 1970). One of the reasons for the common law rule was "conditions which affect alimony entitlement cannot accurately be foreseen at the time antenuptial agreements are entered, and public interest in enforcement of the legal obligation to support overrides a premarital anticipatory forfeiture of alimony." *In re Marriage of Gudenkauf*, 204 N.W.2d at 587.[2] In *Norris*, we noted waiver

---

[2]The "legal obligation to support" referenced in *In re Marriage of Gudenkauf* was the then-prevailing duty of the husband to support his wife. *See Norris*, 174 N.W.2d at 370 ("Public policy has declared that certain obligations attach to a marriage contract including the duty of the husband to support his wife. It is against the public interest to permit the parties to enter into an antenuptial agreement relieving him of this duty."); 41 Am. Jur. 2d *Husband and Wife* § 143, Westlaw (updated Feb. 2018) ("At traditional common law, the duty of providing support for the household is on the husband, and the wife is under no duty to support the husband."). We acknowledge the inherent gender bias of this common law duty (although we note the gender divide was less stark in Iowa, *see York v. Ferner*, 59 Iowa 487, 491, 13 N.W. 630, 632 (1882) (refusing to enforce a premarital agreement against a husband after the wife abandoned the husband); *see also Norris*, 174 N.W.2d at 371 (relying on *York* to refuse to enforce a premarital agreement against a wife after the husband abandoned the wife)) and that such gender bias is no longer an appropriate analytical consideration. *See, e.g.*, *Hardee v. Hardee*, 585 S.E.2d 501, 504 n.3 (S.C. 2003) (overruling precedent, which invalidated a reconciliation agreement because it relieved the husband of his obligation to support his wife, on the grounds that the precedent "represents an outdated and unwarranted generalization of the sexes which is no longer warranted in today's society"). Nonetheless, the basic principle for such a duty—that a spouse is obligated to support the other spouse—accords with the modern understanding of a marital relationship. *See, e.g.*, Iowa Code § 252A.3(1) (providing a spouse is liable for support of a dependent spouse); *id.* § 597.10 (providing if either spouse abandons the other, the abandoned spouse may dispose of the abandoning spouse's property for support and maintenance); *In re Marriage of Probasco*, 676 N.W.2d 179, 184 (Iowa 2004) ("Alimony 'is a stipend to a spouse in lieu of the other spouse's legal obligation for support.' " (quoting *In re Marriage of Francis*, 442 N.W.2d 59, 62 (Iowa 1989) (en banc))); *In re Marriage of*

of the right to alimony violates public policy because such a waiver can place a spouse

> in a position where he or she would be forced to endure conduct which would constitute grounds for divorce because of fear that the commencement of an action for divorce would deprive the person of contracted property rights and means of support.

174 N.W.2d at 370. In sum, the principles underlying the common law rule are twofold: first, the public interest in ensuring the financially dependent spouse has support outweighs the freedom to waive alimony by contract because the need for support is impossible to predict, and second, a financially dependent spouse should not have to remain in a marriage solely because leaving the marriage would deprive that spouse of support.

In 1980, the legislature amended then-section 598.21 to allow courts to consider provisions in a premarital agreement when deciding alimony issues.[3] *Vande Kop*, 528 N.W.2d at 613. Consequently, courts could—for a time between 1980 and 1992—decline to award alimony because of a waiver in the premarital agreement. *E.g., In re Marriage of Spiegel*, 553 N.W.2d 309, 311–12, 319 (Iowa 1996) (en banc) (noting, because the parties' premarital agreement was executed in 1988, the

---

*Winegard*, 278 N.W.2d 505, 512 (Iowa 1979) ("Public policy will not allow a party to a marriage contract to avoid *his or her* resulting obligation of support." (Emphasis added.)); *see also Sanford v. Sanford*, 694 N.W.2d 283, 287–88, 289 (S.D. 2005) (reaffirming, under South Dakota law, same general underlying purposes noted in the *In re Marriage of Gudenkauf* and *Norris* cases); *cf.* Iowa Code § 597.14 (imposing duty on both spouses to provide "reasonable and necessary expenses of the family and the education of the children"); *Turner v. Safley*, 482 U.S. 78, 95, 107 S. Ct. 2254, 2265 (1987) (noting marriages "are expressions of emotional support and public commitment").

[3]The current version of this amendment is found in Iowa Code section 598.21A(1)(*i*). Section 598.21A(1) enumerates the criteria a court should consider in determining if an award of spousal support is appropriate, including "[t]he provisions of an antenuptial agreement." Iowa Code § 598.21A(1)(*i*) (2016).

court could consider the alimony waiver in determining if alimony was appropriate), *abrogated in part on other grounds by In re Marriage of Shanks*, 758 N.W.2d 506.  However, in 1992, the legislature enacted the IUPAA, including section 596.5(2), which reestablished the common law rule prohibiting waiver of alimony in premarital agreements.  *Id.* at 319.

The legislature's return to the common law rule expresses a preference for protecting the financially dependent spouse's unpredictable need for support and ability to leave a broken marriage over the parties' general right to contract.  In turn, that preference undergirds our conclusion that the purpose of section 596.5(2) is to explicitly and broadly protect the right to support.

We also find guidance for our interpretation of section 596.5(2) by comparing the IUPAA with the Uniform Premarital Agreement Act (UPAA), the uniform act on which the IUPAA was modeled.  *In re Marriage of Shanks*, 758 N.W.2d at 511–12; ("In the absence of instructive Iowa legislative history, we look to the comments and statements of purpose contained in the [UPAA] to guide our interpretation of the comparable provisions of the IUPAA."); *see also Kline*, 895 N.W.2d at 438 (noting we look at the overall structure and context when interpreting ambiguous statutes).  Comparison of the two Acts reveals important differences.  In particular, we discern the IUPAA provides greater protection for vulnerable parties in some contexts than the UPAA.

Most notably, the IUPAA explicitly protects the right to spousal support against waiver whereas the UPAA explicitly does not.[4]  *Compare* Iowa Code § 596.5(2) (2016), *with* Unif. Premarital Agreement Act,

---

[4]In contrast, both the IUPAA and the UPAA provide a child's right to support may not be adversely affected.  *Compare* Iowa Code § 596.5(2), *with* Unif. Premarital Agreement Act § 3(b), 9C U.L.A. 35, 43 (2001) ("The right of a child to support may not be adversely affected by a premarital agreement.").

Prefatory Note, 9C U.L.A. 35, 36–37 (2001), *and id.* § 3(a)(4), 9C U.L.A. at 43 ("Parties to a premarital agreement may contract with respect to . . . the modification or elimination of spousal support . . . ."). Similarly, the IUPAA provides more protection against waiver of spousal support than almost every other jurisdiction.[5] *See* Laura W. Morgan, *Litigation Case*

---

[5]Forty-eight jurisdictions allow premarital waiver of spousal support. They are Alabama, *see Ex parte Walters*, 580 So. 2d 1352, 1353–54 (Ala. 1991) (upholding validity of premarital agreement that included an alimony waiver); Alaska, *Brooks v. Brooks*, 733 P.2d 1044, 1048–51 (Alaska 1987) (acknowledging and rejecting historical practice of treating premarital agreements dictating alimony as against public policy); Arizona, Ariz. Rev. Stat. Ann. § 25-203(A)(4) (Westlaw through 1st Reg. Sess. of the Fifty-Third Legis. (2017)); Arkansas, Ark. Code Ann. § 9-11-403(a)(4) (West, Westlaw through 2017 Reg. Sess. & 1st Extraordinary Sess.); California, Cal. Fam. Code § 1612(c) (West, Westlaw through urgency legis. through ch. 2 of 2018 Reg. Sess.); Colorado, *Newman v. Newman*, 653 P.2d 728, 735 (Colo. 1982) (en banc); Connecticut, Conn. Gen. Stat. Ann. § 46b-36d(a)(4) (West, Westlaw through 2017 Jan. Reg. Sess. & June Spec. Sess.); Delaware, Del. Code Ann. tit. 13, § 323(a)(4) (West, Westlaw through 81 Laws 2018); District of Columbia, D.C. Code Ann. § 46-503(a)(4) (West, Westlaw through Jan. 30, 2018); Florida, *Posner v. Posner*, 233 So. 2d 381, 385 (Fla. 1970); Georgia, *Scherer v. Scherer*, 292 S.E.2d 662, 665–66 (Ga. 1982); Hawai'i, Haw. Rev. Stat. Ann. § 572D-3(a)(4) (West, Westlaw through Act 3 (End) of 2017 1st Spec. Sess.); Idaho, Idaho Code Ann. § 32-923(1)(d) (West, Westlaw through 2017 1st Reg. Sess.); Illinois, 750 Ill. Comp. Stat. Ann. 10/4(a)(4) (West, Westlaw through P.A. 100-579 of 2018 Reg. Sess.); Indiana, Ind. Code Ann. § 31-11-3-5(a)(4) (West, Westlaw through 2017 First Reg. Sess.); Kansas, Kan. Stat. Ann. § 23-2404(a)(4) (West, Westlaw through 2017 Reg. Sess.); Kentucky, *Edwardson v. Edwardson*, 798 S.W.2d 941, 946 (Ky. 1990); Louisiana, *McAlpine v. McAlpine*, 679 So. 2d 85, 91–93 (La. 1996); Maine, Me. Stat. tit. 19-a, § 604(4) (Westlaw through 2017 1st Reg. & 1st Spec. Sessions); Maryland, *Frey v. Frey*, 471 A.2d 705, 710 (Md. 1984); Massachusetts, *Austin v. Austin*, 839 N.E.2d 837, 840 (Mass. 2005); Michigan, *Allard v. Allard*, 899 N.W.2d 420, 426–27 (Mich. Ct. App. 2017) (noting Michigan statute allows parties to contract about "property" and holding "property" includes attorney fees and spousal support); Minnesota, *Hill v. Hill*, 356 N.W.2d 49, 57 (Minn. Ct. App. 1984); Mississippi, *see Estate of Hensley v. Estate of Hensley*, 524 So. 2d 325, 327–28 (Miss. 1988) (upholding provision of the premarital agreement limiting the length of time wife can claim right to alimony); Missouri, *Gould v. Rafaeli*, 822 S.W.2d 494, 495–97 (Mo. Ct. App. 1991) (upholding enforcement of premarital agreement wherein the parties waived the right to maintenance and support); Montana, Mont. Code Ann. § 40-2-605(1)(d) (West, Westlaw through 2017 Sess.); Nebraska, Neb. Rev. Stat. Ann. § 42-1004(1)(d) (West, Westlaw through 1st Reg. Sess. of 105th Legis. (2017)); Nevada, Nev. Rev. Stat. Ann. § 123A.050(1)(d) (West, Westlaw through 2017 Reg. Sess.); New Hampshire, *see MacFarlane v. Rich*, 567 A.2d 585, 591 (N.H. 1989) (upholding premarital-agreement provision dictating support obligations because enforcement would not work an unconscionable hardship on the challenging spouse); New Jersey, N.J. Stat. Ann. § 37:2-34(d) (West, Westlaw through L.2017, c. 307 & J.R. No. 23); New York, N.Y. Dom. Rel. Law § 236, pt. B(3) (McKinney, Westlaw through L.2018, ch. 1) (allowing parties to contract about "maintenance,"

*Law Review, in* Gary N. Skoloff et al., *Drafting Prenuptial Agreements* § IX-B[2] (2d ed. 2017-2 Supp.), Westlaw.

Additionally, the IUPAA imposes a duty on both parties to "execute all documents necessary to enforce the agreement";[6] comparatively, the

---

which includes alimony); *see id.* § 236, pt. B(1)(a) (defining maintenance); North Carolina, N.C. Gen. Stat. Ann. § 52B-4(a)(4) (West, Westlaw through 2017 Reg. Sess., including 2018-1, of the Gen. Assemb.); North Dakota, *see* N.D. Cent. Code Ann. § 14-03.2-09(2) (West, Westlaw through 2017 Reg. Sess.); Ohio, *see Fletcher v. Fletcher*, 628 N.E.2d 1343, 1347–48 (Ohio 1994) (upholding enforcement of premarital agreement wherein parties waived right to support); Oklahoma, *Hudson v. Hudson*, 350 P.2d 596, 597–98 (Okla. 1960); Oregon, Or. Rev. Stat. Ann. § 108.710(1)(d) (West, Westlaw through 2017 Reg. Sess. Legis.); Pennsylvania, *see* 23 Pa. Stat. and Cons. Stat. Ann. § 3106 & cmt. (West, Westlaw through 2018 Reg. Sess. Act 9); Rhode Island, 15 R.I. Gen. Laws Ann. § 15-17-3(a)(4) (West, Westlaw through ch. 480 of Jan. 2017 Sess.); South Carolina, *Hardee*, 585 S.E.2d at 503–04; Tennessee, *Cary v. Cary*, 937 S.W.2d 777, 777–78, 782 (Tenn. 1996); Texas, Tex. Fam. Code Ann. § 4.003(a)(4) (West, Westlaw through 2017 Reg. & 1st Called Sessions of the 85th Legis.); Utah, Utah Code Ann. § 30-8-4(1)(d) (West, Westlaw through 2017 1st Spec. Sess.); Vermont, *cf. Bassler v. Bassler*, 593 A.2d 82, 84, 87–88 (Vt. 1991) (refusing to enforce premarital agreement, wherein wife waived her right to any and all property, because wife was receiving public assistance at the time of the divorce); Virginia, Va. Code Ann. § 20-150(4) (West, Westlaw through 2017 Reg. Sess.); Washington, *see In re Estate of Crawford*, 730 P.2d 675, 678–79 (Wash. 1986) (en banc) (holding premarital agreement was facially unfair when it did not provide for wife in the event of divorce or death of husband because the value of husband's property was not disclosed to wife and wife signed without independent legal advice or full knowledge of her rights); West Virginia, *Carr v. Hancock*, 607 S.E.2d 803, 806 (W. Va. 2004); Wisconsin, Wis. Stat. Ann. § 766.58(3)(d), (9), (12) (West, Westlaw through 2017 Act 136); and Wyoming, *see Seherr–Thoss v. Seherr–Thoss*, 141 P.3d 705, 711, 715 (Wyo. 2006) (enforcing premarital-agreement provision limiting alimony).

Three jurisdictions categorically do not allow waiver of spousal support. They are Iowa, Iowa Code § 596.5(2); New Mexico, N.M. Stat. Ann. § 40-3A-4(B) (West, Westlaw through ch. 1 of the 2d Reg. Sess. of 53rd Legis. (2018)) ("A premarital agreement may not adversely affect the right of a . . . spouse to support . . . ."); *Rivera v. Rivera*, 243 P.3d 1148, 1154–55 (N.M. Ct. App. 2010) (holding premarital agreement, wherein parties waived right to claim support after divorce, violates section 40-3A-4(B)); and South Dakota, *Sanford*, 694 N.W.2d at 291.

[6]The documents necessary to enforce the agreement can be more than just the agreement itself. For example, when the party seeking enforcement discloses his or her property and financial obligations in writing to the other party and that written disclosure was the only way the other party knew about such property and obligations, both parties must execute the disclosure document. *See* Iowa Code § 596.8(1)(*c*) (providing an agreement is unenforceable if the party seeking enforcement did not disclose his or her property and financial obligations to the other party and the other party did not otherwise know of such obligations). Or where a premarital agreement requires the parties to jointly file their tax returns, both parties must execute

UPAA does not.  *Compare* Iowa Code § 596.4, *with* Unif. Premarital Agreement Act § 2, 9C U.L.A. at 41.[7]  The additional language in the IUPAA ensures both parties have access to all documents necessary for enforcement as well as to the actual agreement.  This protects vulnerable parties against blind enforcement of the agreement.  *See* Amberlynn Curry, Comment, *The Uniform Premarital Agreement Act and Its Variations Throughout the States*, 23 J. Am. Acad. Matrim. Law. 355, 369 (2010).

We further note the IUPAA is more protective of vulnerable parties because it establishes more grounds for claims of unenforceability of premarital agreements than the UPAA.  *Compare* Iowa Code § 596.8(1), *with* Unif. Premarital Agreement Act § 6(a), 9C U.L.A. at 48–49.[8]  Under

---

documents related to the filing of the joint returns.  *See Haigh v. Comm'r*, 97 T.C.M. (CCH) 1794, 2009 WL 1661648, at *1, *7 (2009) (assuming without deciding that wife's refusal to sign certain documents relating to the parties' taxable year at issue made unenforceable the premarital-agreement provision that required the parties to file joint tax returns).

[7]Iowa Code section 596.4 provides, "A premarital agreement must be in writing and signed by both prospective spouses.  It is enforceable without consideration other than the marriage.  Both parties to the agreement shall execute all documents necessary to enforce the agreement."  Section 2 of the UPAA provides, "A premarital agreement must be in writing and signed by both parties.  It is enforceable without consideration."  Unif. Premarital Agreement Act § 9, 9C U.L.A. at 41.

[8]Iowa Code section 596.8 provides in pertinent part,

> 1.  A premarital agreement is not enforceable if the person against whom enforcement is sought proves any of the following:
>
> *a.* The person did not execute the agreement voluntarily.
>
> *b.* The agreement was unconscionable when it was executed.
>
> *c.* Before the execution of the agreement the person was not provided a fair and reasonable disclosure of the property or financial obligations of the other spouse; and the person did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other spouse.

Iowa Code § 596.8(1).

UPAA section 6 provides in relevant part,

both Acts, an agreement is unenforceable if it was not executed voluntarily. Iowa Code § 596.8(1)(*a*); Unif. Premarital Agreement Act § 6(a)(1), 9C U.L.A. at 48. However, under the IUPAA, an agreement is also unenforceable if it was unconscionable *or* the party against whom enforcement is sought lacked adequate knowledge of the other party's property and financial obligations. Iowa Code § 596.8(1)(*b*)–(*c*). In contrast, under the UPAA, both unconscionability *and* inadequate knowledge are required before the agreement is unenforceable. Unif. Premarital Agreement Act § 6(a)(2), 9C U.L.A. at 49. As we have previously noted, section 6 of the UPAA was designed to "enhance the enforceability of premarital agreements" and to emphasize enforcement over fairness if the parties voluntarily entered into the agreement. *In re Marriage of Shanks*, 758 N.W.2d at 513–14 (quoting *In re Marriage of Bonds*, 5 P.3d 815, 824 (Cal. 2000), *superseded by statute on other grounds*, Act of Sept. 10, 2001, ch. 286, § 2, 2001 Cal. Stat. 2316, 2317 (codified at Cal. Fam. Code § 1615 (West, Westlaw through urgency legis. through ch. 2 of 2018 Reg. Sess.)). Iowa Code section 596.8, by contrast, reveals that the IUPAA does not universally share the UPAA's preference

---

(a) A premarital agreement is not enforceable if the party against whom enforcement is sought proves that:

(1) that party did not execute the agreement voluntarily; or

(2) the agreement was unconscionable when it was executed and, before execution of the agreement, that party:

(i) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

(ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

(iii) did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.

Unif. Premarital Agreement Act § 6(a), 9C U.L.A. at 48–49.

for "contractual autonomy and certainty over flexibility and individualized discretion." *See* Barbara Ann Atwood, *Ten Years Later: Lingering Concerns About the Uniform Premarital Agreement Act*, 19 J. Legis. 127, 153 (1993). And in that way, the IUPPA provides greater protection to vulnerable parties than the UPAA.

Thus, our comparison of features of the IUPAA and the UPAA reveals the IUPAA's tendency toward providing more protection to vulnerable parties. As children and financially dependent spouses are vulnerable parties, it is logical to conclude we should interpret IUPAA provisions explicitly protecting children or dependent spouses consistently with such provisions' purpose: the protection of vulnerable parties.

In interpreting statutes, we also consider the consequences of different interpretations. Iowa Code § 4.6(5). An interpretation of section 596.5(2) allowing waiver of support-related attorney fees in premarital agreements would produce several undesirable results.

First, such an interpretation could leave a financially dependent spouse without the ability to pursue his or her right to alimony. As a practical matter, the existence of a right presupposes that one must necessarily have the ability to pursue and exercise that right. *Cf. Walker v. Walker*, 765 N.W.2d 747, 755 (S.D. 2009) (noting the logical extension of the rule precluding waiver of alimony in a prenuptial agreement "is that attorney's fees associated with an alimony award also cannot be prohibited by the prenuptial agreement"). Attorney services and fees incurred for them are often necessary in asserting and enforcing the right to support. 45 Am. Jur. Proof of Facts 2d 699, 705 (1986). The ability to pursue and exercise the right to spousal support is especially imperative where a premarital agreement will result in a substantially

disproportionate property distribution because alimony is a means of mitigating such inequity. *See In re Marriage of Schenkelberg*, 824 N.W.2d at 487.

Correspondingly, an interpretation of section 596.5(2) concluding the right to support is not adversely affected by an attorney fee waiver could result in a financially dependent parent being unable to adequately litigate the issue of child support. Tim contends Iowa Code section 598.12(1)–(2), which authorizes the court to appoint a guardian ad litem (GAL) or attorney for any children of the parties,[9] is sufficient to protect a child's right to support. We disagree.

Primarily, we note there is no guarantee a GAL or child's attorney will be appointed as section 598.12(1)–(2) is a permissive statute. Even if a GAL or child's attorney is appointed, the scope of the appointment is most likely directed to custody issues. *See* Iowa Code § 598.12(1), (2)(*a*) (enumerating duties and powers of the GAL or child's attorney); *cf.* § 598.12(4) (allowing the court to require an appropriate agency investigate matters pertinent the children's best interests "in a dispute concerning custody of the child or children"). Indeed, a review of the record in this case reveals input from the GAL focused almost exclusively on custody and physical care issues.

The argument that the appointment of separate counsel for children in a dissolution action should eliminate a claim for reimbursement of a parent's attorney fees incurred in litigating child-

---

[9]In the 2018 Code, the statutory authority for a court to appoint a GAL or child's attorney and the powers and duties of the GAL and child's attorney are separated into section 598.12 (GAL) and section 598.12A (child's attorney). *Compare* Iowa Code §§ 598.12(1), .12A(1) (2018), *with* Iowa Code § 598.12(1)–(2) (2016). Likewise, section 598.12(4) in the 2016 Code—pertaining to child custody investigations—is its own provision—section 598.12B—in the 2018 Code. *Compare* Iowa Code § 598.12B (2018), *with* Iowa Code § 598.12(4) (2016).

related issues was advanced in *In re Marriage of Joseph*. 266 Cal. Rptr. 548, 553 (Ct. App. 1990), *superseded by statute on other grounds*, Act of Sept. 13, 1990, ch. 893, § 1, 1990 Cal. Stat. 3781, 3781 (codified as amended at Cal. Fam. Code § 2032). There, one parent argued the other parent should not be entitled to attorney fees connected to litigating child-related issues "because the children's interests were represented by independent counsel [and the parents] were truly asserting their own interests." *Id.* The California court rejected the argument, explaining,

> This argument completely overlooks the fact that if one party does not have sufficient funds to initiate or defend against actions concerning the children's support and/or custody the litigation will never proceed to the point where independent counsel for the children may be appointed. Moreover, as wife points out, representatives appointed to protect the children's interests do not operate in a vacuum, but rely heavily on representations of counsel for the parents.

*Id.* We find this reasoning persuasive.

Finally, we observe premarital-agreement provisions waiving a claim for attorney fees pertaining to support issues may inhibit a court's ability to make accurate and appropriate decisions regarding alimony and that are in the best interests of the children. *See, e.g.*, *In re Marriage of Ikeler*, 161 P.3d 663, 670–71 (Colo. 2007) (en banc). In Iowa, child support is calculated using the child support guidelines. Iowa Code § 598.21B(1); Iowa Ct. R. 9.2. While the guidelines are not hypertechnical, professional expertise provided by counsel can assist the court in determining the relevant values of the factors affecting support owed under the guidelines.[10] Similarly, access to legal assistance is helpful in advocating for a variance from the guidelines. *See* Iowa Ct.

---

[10]For example, in this case, Tim is a self-employed farmer. Because his annual income fluctuates, the parties presented expert evidence on the issue.

R. 9.11 (allowing a variance upon satisfying certain legal standards such as a showing "[s]ubstantial injustice would result"). In the spousal support context, the complexity of the determination speaks to the importance of counsel. *See* Iowa Code § 598.21A(1) (providing illustrative list of criteria relevant to an alimony determination); *In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015) (identifying three kinds of alimony and noting that precedent is of little value in determining alimony issues in the instant case); *cf. In re Marriage of Joseph*, 266 Cal. Rptr. at 551 (recognizing the necessity of attorneys in child custody cases, which, like child and spousal support cases, can be "long drawn out and bitter and they frequently present difficult questions for decision, requiring long and thorough preparation by competent counsel" (quoting *Lucachevitch v. Lucachevitch*, 159 P.2d 688, 692–93 (Cal. Ct. App. 1945))).

In contrast, an interpretation of section 596.5(2) categorically precluding premarital-agreement provisions waiving support-related attorney fees does not lead to undesirable consequences. It instead increases the likelihood that a financially dependent spouse or parent will be able to effectively assert claims for spousal and child support. Such an interpretation also increases the likelihood that the court will receive relevant evidence informing its decisions on support.

Moreover, such an interpretation of the statute will not result in an automatic award of attorney fees in every dissolution case in which support issues are litigated. An award of attorney fees remains within the discretion of the district court. *See In re Marriage of Kimbro*, 826 N.W.2d at 704; *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006).

For all of these reasons, we hold a premarital-agreement provision waiving an award of attorney fees related to issues of child or spousal support adversely affects the right to support. Accordingly, such provisions are categorically prohibited by section 596.5(2). Thus, the district court erred in relying on the attorney-fee-waiver provision in the parties' premarital agreement to deny Jodi's request for support-related attorney fees.

**C. Attorney Fees for Child Custody.** Under our statutory construction of section 596.5(2), we cannot find a basis to prohibit the attorney-fee-waiver provision in the parties' premarital agreement regarding attorney fees for child custody. If we are going to find such a prohibition, the prohibition must be under section 596.5(1)(*g*). In other words, the attorney-fee-waiver provision, otherwise known as the fee-shifting bar provision, in the parties' premarital agreement regarding attorney fees for child custody must be in violation of public policy.

We start by examining the IUPAA in its entirety. The IUPAA does not provide for a premarital agreement to determine custody of children born during the marriage. Moreover, the legislature has determined the court must determine the best interest of the children when awarding custody. *See* Iowa Code § 598.41.

Given the need to take into account the best interests of the children, we find provisions in a premarital agreement that limit child custody rights are void as a matter of public policy. *See In re Marriage of Best*, 901 N.E.2d 967, 970 (Ill. App. Ct. 2009) ("The law severely limits on public policy grounds the enforceability of contracts affecting the custody and support of minor children. Illinois law *per se* rejects premarital agreements that impair child-support rights or specify custody.").

As a corollary, provisions in a premarital agreement that contain fee-shifting bars as to the litigation of child custody are void as a matter

of public policy. *Cf. In re Marriage of Linta*, 18 N.E.3d 566, 570–71 (Ill. App. Ct. 2014) (holding marital settlement agreement's prevailing party provision was void as to issues involving children). Cases from other jurisdictions shed light on this point.

In *In re Marriage of Ikeler*, the Colorado Supreme Court addressed whether a fee-shifting bar in a marital agreement was enforceable. 161 P.3d at 668–71. The court stated a fee-shifting bar could "substantially impair[]" "the lesser-earning spouse's ability to effectively litigate the issues related to the children." *Id.* at 670. As a result, "[t]his . . . may negatively impact the court's ability to assess the best interests of the children." *Id.* at 670–71. The court therefore concluded a fee-shifting bar "violates public policy where one spouse lacks the financial resources to litigate the dissolution, and the case involves issues of parental responsibilities and child support." *Id.* at 670.

In *In re Marriage of Joseph*, the California Court of Appeal held that the marital settlement agreement violated public policy and was void. 266 Cal. Rptr. at 553. It reasoned, "[P]arties to a divorce cannot abridge the courts' ability to act on behalf of the children, . . . by attempts to deny attorney's fees where needed to institute or defend against [child-related] actions." *Id.* at 552.

In *In re Marriage of Burke*, the Washington Court of Appeals reached the same conclusion as the California Court of Appeal in *In re Marriage of Joseph*. *See* 980 P.2d 265, 268 (Wash. Ct. App. 1999). The Washington Court of Appeals reasoned the state has an "interest in the welfare of children[,]" and this interest "requires that the court have the discretion to make an award of attorney fees and costs so that a parent is not deprived of his or her day in court by reason of financial disadvantage." *Id.*

In examining *In re Marriage of Ikeler*, *In re Marriage of Joseph*, and *In re Marriage of Burke*, the Illinois Appellate Court in *In re Marriage of Best* concluded that those three cases reflected Illinois public policy in regards to fee-shifting bars on child-related issues. 901 N.E.2d at 971–72. Thus, the court held the fee-shifting bar as applied to the case before it violated Illinois public policy as long as the spouse demonstrated an inability to pay the attorney fees. *Id.* at 972.

We find the reasoning of *In re Marriage of Ikeler*, *In re Marriage of Joseph*, and *In re Marriage of Burke* persuasive. We hold Iowa public policy prohibits fee-shifting bars on child-custody issues. Accordingly, section 596.5(1)(*g*) prohibits fee-shifting bar provisions as to child-custody issues.

## IV. Conclusion.

We affirm the court of appeals decision on its award of attorney fees for child-related issues. We vacate the part of the court of appeals decision regarding attorney fees for spousal support. We affirm the remaining parts of the court of appeals decision, including the part pertaining to temporary attorney fees and expenses. We remand the case to the district court to determine the amount, if any, of trial attorney fees and costs Jodi is entitled to for the child custody, child support, and spousal support issues litigated in the dissolution matter in the district court. The district court should also determine the amount of appellate attorney fees Jodi is entitled to for the child custody, child support, and spousal support issues.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED WITH INSTRUCTIONS.**