**IN THE COURT OF APPEALS OF IOWA**

No. 18-2140
Filed November 27, 2019


**IN RE THE MARRIAGE OF SHARON LAURINE WILSON
AND RICHARD WRIGHT WILSON**

**Upon the Petition of
SHARON LAURINE WILSON,**
        Petitioner-Appellant,

**And Concerning
RICHARD WRIGHT WILSON,**
        Respondent-Appellee.
_____


        Appeal from the Iowa District Court for Story County, Timothy J. Finn (trial)

and Steven J. Oeth (decree), Judges.


        An ex-wife appeals the property division and spousal support amount in the

decree dissolving her twenty-three year marriage. **AFFIRMED AS MODIFIED.**


        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

        Matthew Hohenstein of Parmenter Law Office, Huxley, for appellee.


        Considered by Tabor, P.J., and Mullins and May, JJ.

**TABOR, Presiding Judge.**

Richard and Sharon Wilson were married for twenty-three years. In their divorce decree, the district court declined to divide $1.2 million in funds that Richard inherited from his parents. The decree also directed Richard to pay $1500 per month in spousal support until Sharon reaches age sixty-seven and then $1000 per month until either party's death. Sharon appeals those two provisions. She also contends Richard should pay her attorney fees for both the trial and appeal.

Because the district court's thoroughly considered decree achieves equity between the parties, we affirm on all grounds. We modify the decree only slightly to correct a minor calculation error pointed out by Richard. We also decline to award appellate fees.

## I. Facts and Prior Proceedings

Richard and Sharon married in 1995. They did not have children. They have comparable educational backgrounds—both earning bachelor's degrees.

Sharon also has a nursing degree, but has not worked as a registered nurse in almost two decades. Recently, she has been an in-home caregiver. From 2010 through 2014, she earned an annual income of about $42,700. In recent years, several medical conditions limited her ability to work full time. At the time of trial, Sharon was fifty-nine years old. She described her health as "on the decline." She suffers from osteoporosis, arthritis, labile hypertension, depression, post-traumatic stress disorder, and chronic lower back pain.

Richard has a degree in finance. He worked as a mail carrier for the United States Postal Service for thirty years, until his retirement in 2012. Since then, Richard has earned about $700 per month as a part-time florist. Between his

postal pension and Social Security benefits, he receives an additional $2895 per month. He also receives income from investment dividends and interest. Richard was sixty-two at the time of trial. In contrast to Sharon, he enjoys good health.

Relevant to a key issue on appeal, Richard inherited substantial assets from his parents. During the marriage, he held an interest in a family farm corporation. He sold that property in 2011 and placed the proceeds into three accounts. Richard calculated the value of his inheritance at $1,209,252 and the income generated from that property at $303,400. Sharon received a separate inheritance of $10,000 from Richard's mother. She also inherited about $5000 from her aunt.

By both of their accounts, during the marriage, Sharon and Richard enjoyed a comfortable but not extravagant lifestyle. They spent money on home improvements and some travel. They maintained separate bank accounts but shared in the monthly living expenses.

Sharon petitioned for divorce in December 2017. The district court held a trial in July 2018 to decide disputed property and spousal support issues. The court issued a decree in October 2018 dividing the marital property. The court calculated the total marital estate at $1,234,427. Those marital assets did not include Richard's $1,209,252 inheritance but they did include the income generated from that inherited property.

The court awarded assets valued at $241,192 to Sharon and assets valued at $993,235 (including the family home) to Richard.[1] The court required Richard

---

[1] The court awarded a portion of Richard's pension to Sharon so that she could continue receiving health insurance at a reasonable cost. Concomitantly, the court divided her retirement benefits according to the *In re Marriage of Benson* formula. *See* 545 N.W.2d 252, 256 (Iowa 1996).

to make an equalization payment of $376,021 to Sharon. The decree also directed Richard to pay spousal support, though less than requested by Sharon, and trial attorney fees though again less than requested by Sharon. Sharon appeals.

## II. Scope and Standards of Review

We review dissolution matters de novo. *In re Marriage of Pals,* 714 N.W.2d 644, 646 (Iowa 2006). Because the district court encounters the witnesses first hand, we give weight to its factual findings but we don't consider them binding. *In re Marriage of Zabecki,* 389 N.W.2d 396, 398 (Iowa 1986).

Because attorney fee awards are discretionary, our review is for an abuse of discretion. *In re Marriage of Erpelding*, 917 N.W.2d 235, 238 (Iowa 2018). We disturb the district court's decision only when it rests on grounds that are clearly unreasonable or untenable. *Id.*

## III. Analysis

On a preliminary matter, Richard asserts the property division of the decree should be modified to correct a "minor error." He contends he double-counted $8146 of his inheritance, which would leave only $1,201,106 to be excluded from the marital assets. He proposes his equalization payment to Sharon be increased by $4073. We agree with his proposal and move on to Sharon's contentions.

### A.    Inherited Property

Sharon contends the district court wrongly decided Richard's $1.2 million inheritance from his parents was not divisible property. The resolution of her contention starts with Iowa Code section 598.21(5) (2018). That statute requires divorce courts to "divide all property, except inherited property or gifts received or expected by one party, equitably between the parties" after considering a host of

factors. *See* Iowa Code § 598.21(5)(a)–(m). Inherited property received by either party before or during the marriage is the property of that party and is not subject to property division in the divorce "except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage." *Id.* § 598.21(6).

In deciding if it would be equitable to divide one party's inheritance, we look to these five factors: (1) the parties' contributions toward the property's care, preservation, or improvement; (2) the existence of any independent close relationship between the testator and the non-inheriting spouse; (3) the parties' separate contributions to their economic welfare to whatever extent those contributions preserve the property for either of them; (4) any special needs of either party; (5) any other matter that would render it plainly unfair to a spouse to have the property set aside for the exclusive enjoyment of the devisee. *See In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013)

Here, Richard received income from his trust and family farming corporation throughout his twenty-three year marriage to Sharon. He incorporated the income into various bank accounts and used it to fund marital expenses, including travel and home remodeling. He also added the farm dividends and interest income into joint investment accounts. In short, the funds generated by the inherited property could not be traced directly back to Richard's separate property. But placing inherited property into joint ownership does not, in and of itself, destroy the separate character of the property. *In re Marriage of Hoffman,* 493 N.W.2d 84, 89 (Iowa Ct. App. 1992).

We agree with the district court's conclusion that the most persuasive factor here was the testators' intent. *See McDermott*, 827 N.W.2d at 678–79 (ranking testator's intent and circumstances surrounding inheritance as controlling factors) Richard's parents intended him to be the sole recipient of the inherited property. That intent is evident from the fact that Richard's mother bequeathed a separate $10,000 to Sharon.

When we assess the special needs of either party, we recognize Sharon has health problems while Richard does not. But we find that situation addressed by the overall division of the property, the spousal support award, and the provision for Sharon to receive a portion of Richard's pension so that she can continue to receive health insurance at a reasonable cost. We see nothing inequitable about the court's refusal to divide the inheritance. We also note the district court was mindful of the equities when it declined to set aside another $303,400 that Richard estimated as the amount of money generated by the inherited property.

Our only change in the property distribution is to order Richard to pay an additional $4073 as part of the overall equalization payment.

## B.      Spousal Support

At trial, Sharon asked for $3000 per month in alimony.[2]  Richard countered with a proposal he pay just $815 per month. The district court found it reasonable for Richard to pay $1500 per month in spousal support until Sharon turned sixty-

---

[2] Our case law uses the terms "alimony" and "spousal support" interchangeably, though the statutory phrase is now "spousal support." *See In re Marriage of Ales*, 592 N.W.2d 698, 702 n.2 (Iowa Ct. App. 1999).

seven (approximately eight years) and then step down to $1000 per month until death or her remarriage. On appeal, Sharon argues those amounts were inequitable and renews her request for $3000 per month.

Iowa's approach to spousal support comes from statute. A court may grant support after considering the following non-exhaustive list of factors: (1) the marriage's length; (2) the parties' age and physical and emotional health; (3) the property distribution under section 598.21; (4) the educational attainments of the parties; (5) their relative earning capacities; (6) the feasibility of the party seeking maintenance to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage and the length of time necessary to achieve this goal; (7) tax consequences; and (8) any mutual agreements. *See* Iowa Code § 598.21A(1).

Here, the parties agree their situation warrants an award of traditional alimony. *See In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015) (explaining purpose of traditional alimony award is "to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued"). The question is the amount.

In assessing the level of Sharon's need and Richard's ability to pay, we recognize Sharon is limited to part-time work because of her declining health. For his part, Richard's retirement cabins his earning capacity. The district court calculated Sharon's post-dissolution gross income at $2075 per month and Richard's gross income at $4615 per month. The court also noted Sharon's ability

to earn as much as $800 per month in interest on her equalization payment.[3] Sharon claimed living expenses of $4900 per month, which the district court found to be overstated. After our de novo review of the record, we reach the same conclusions as the district court. We find the award of spousal support to be an equitable amount.

## C. Trial Attorney Fees

The decree ordered Richard to pay $3000 toward Sharon's attorney fees. In ruling on a motion to amend, the court required Richard to pay another $1000 to compensate Sharon's attorney for preparing two qualified domestic relations orders. On appeal, Sharon argues we should increase the attorney fee by another $3000, for a total of $7000 in trial attorney fees.

"An award of attorney fees remains within the discretion of the district court." *In re Marriage of Erpelding*, 917 N.W.2d 235, 246 (Iowa 2018). We find no abuse of discretion in the district court's decision to have Richard pay $4000 in Sharon's trial attorney fees. Richard's available resources are not so much greater than Sharon's assets that we need to increase the award.

## D. Appellate Attorney Fees

Both parties seek an award of appellate attorney fees. Such an award is not a matter of right, but rather rests in our discretion. *In re Marriage of Stenzel*, 908 N.W.2d 524, 538 (Iowa Ct. App. 2018). We weigh the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of

---

[3] Sharon attacks that statement as ignoring her need to find housing. But as Richard points out on appeal, Sharon is arguing both that "she needs to buy a house" which will limit her cash available to invest and that she will spend $1500 per month on mortgage payments. Richard contends: "If she buys the house outright, she won't have a mortgage."

the appeal. *Id.* While Richard had to defend the district court's rulings, we conclude each party has the means to pay their own appellate attorney fees.

Costs of the appeal shall be divided equally between the parties.

**AFFIRMED AS MODIFIED.**