**IN THE COURT OF APPEALS OF IOWA**

No. 24-1771
Filed June 18, 2025

IN RE THE MARRIAGE OF BRIANA R. BACKER
AND TIM F. BACKER

Upon the Petition of
BRIANA R. BACKER,
        Petitioner-Appellee,

And Concerning
TIM F. BACKER,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Butler County, Colleen Weiland,

Judge.


        A former spouse appeals financial and custodial provisions in a dissolution

decree. **AFFIRMED AS MODIFIED.**


        Tyler J. Johnston of Cordell Law, LLP, Des Moines, for appellant.

        Shanna Chevalier of Laird & Luhring, Waverly, for appellee.


        Considered without oral argument by Ahlers, P.J., and Badding and

Buller, JJ.

**BULLER, Judge.**

Tim Backer appeals a holiday physical-care schedule and assorted economic provisions of a decree dissolving his marriage to Briana Backer. We modify the spousal-support award and affirm the rest of the decree.

## I.      Background Facts and Proceedings

Tim and Briana married in 2000. They have three children together, only one of which (born 2008) is still a minor. When they married, Briana was in college for her bachelor's degree. Tim had completed an associate's degree and was working at John Deere.

During the first years of the marriage, Briana completed her bachelor's and a master's degree. At the time of trial, she worked as a speech pathologist for the local area education agency. By agreement of the parties, Briana worked part-time as the children grew up and increased her hours as the children aged; she was working four days a week (0.8 full-time equivalent) during the school year at the time of the dissolution trial, which still allowed flexibility to attend appointments and school events with the children. She testified she would have to obtain health insurance at an additional cost as a result of the dissolution and did not currently have the option to increase to full-time in the region, but there had been openings in the past. She worked a part-time job over the summer months.

As of trial, Tim was working in John Deere's machine shop with health insurance that covered the children, himself, and Briana. He started working in this role in summer 2022 after working for several different employers over the course of the marriage. His employment at John Deere included an increase in his pay, but a recent switch to first shift lowered his hourly rate a bit and there was

less overtime available. Starting in 2020, Tim spent thousands of dollars purchasing parts for ghost guns, assembled the guns, and sold several of them. He testified the sales were close to the cost of the parts, not for profit.

At trial, the parties spent a significant amount of time disputing the value of various personal property, including furniture, tools, firearms, and vehicles. Each party tended to value property they wanted to keep at its "used" value and the property going to the other as "new." The parties stipulated to joint custody and shared physical care of the minor child. But they could not agree on a regular schedule or holidays.

The court dissolved the parties' marriage. After a two-day trial, the court ordered Tim and Briana share physical care and have joint legal custody of the minor child and set a regular care and holiday schedule. The court valued and divided the parties' disputed personal property and financial accounts. Using income based on the most recent tax documents, the court ordered Tim to pay Briana traditional spousal support and no child support. Finally, the court ordered Tim to "contribute $5000 to Briana's fees."

Tim appeals, and Briana seeks appellate attorney fees.[1]

---

[1] Briana's brief reflects a common issue that frustrates us: instead of a digitally exported copy of a word processing document (such as a Microsoft Word document saved as a .PDF file), Briana's brief was printed out, scanned back into the computer, and then filed as a scanned image. These scanned documents are unnecessarily difficult to read, frequently skew text or cut off words, and often pose problems for digital search functions. We ask parties to please stop filing scanned briefs.

## II.     Standard of Review

A dissolution-of-marriage proceeding is heard in equity, and we generally review the resulting dissolution de novo.  *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015).  "We give weight to the factual determinations made by the district court; however, their findings are not binding upon us."  *Id.*  "We will disturb the trial court's order only when there has been a failure to do equity."  *Id.* (cleaned up).

## III.     Discussion

Tim appeals the spousal support order; the court's valuation of his tools, firearms and firearm parts, and two old vehicles; the order to contribute to Briana's attorney fees; and the Christmas-holiday part of the physical-care schedule.  Briana urges the district court's order was correct and requests appellate attorney fees.  We address the physical care issue first, then the assorted financial claims.

### A.  Holiday Schedule

Tim requested to have visitation with the minor child on Christmas Day after noon.  The decree covers only one more Christmas—for 2025.  Under the decree, "in odd-numbered years" (like 2025) Tim has care of the minor child starting at 10:00 a.m. on Christmas day and lasting until December 28.  Because we cannot change what happened on the Christmas before the appeal was submitted to us, and no action is needed for Tim to have his desired result this Christmas, we do not disturb the holiday-visitation provision of the decree and do not engage with this issue further.

### B. Spousal Support

Tim requests we eliminate or reduce the spousal support he was ordered to pay Briana. He observes Briana's asset distribution was significantly more liquid than his and Briana has "almost no debt" coming out of the marriage. According to Tim, "Briana has a significant earning capacity and potential," has out-earned Tim at times during the marriage, and moving from 0.8 full-time equivalent to full-time would make "her potential earnings . . . equal to or greater than those of Tim."

The district court ordered Tim to pay Briana $1500 a month for three years in spousal support, then $1000 per month until either party's death, Briana's remarriage, or a court modification after a substantial change in circumstances.[2] The court specified the spousal support was "traditional": support based on the parties' twenty-three year marriage and their assumption of "traditional roles" with Tim's career a priority while Briana's depended on parenting needs. In 2023, Tim's wages were more than double Briana's, though the court averaged his 2023 wages and what Tim expected to earn in 2024 to set his salary at $110,000. The court used Briana's 2023 wages of $59,630 in its calculations, though she expected to make a bit more in 2024, and noted Briana would incur monthly insurance costs when she had previously been covered without extra expense by Tim. Briana explained that Tim controlled most of the financial and practical decisions during the marriage, so she had been learning how to handle her finances and what her regular costs would be.

---

[2] The court observed this spousal support resulted in equalized incomes bringing any child support obligation under $10 per month for shared physical care.

"The institutional deference afforded the district court in determining spousal support counsels against undue tinkering with spousal support awards. An appellate court should disturb the district court's determination of spousal support 'only when there has been a failure to do equity.'" *In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023) (citation omitted). "Traditional spousal support is often used in long-term marriages where life patterns have been largely set and 'the earning potential of both spouses can be predicted with some reliability.'" *In re Marriage of Gust*, 858 N.W.2d 402, 410 (Iowa 2015) (citation omitted). "[P]articularly in a traditional marriage, when the parties agree a spouse should stay home to raise children, the economic consequences of absence from the workplace can be substantial." *Id.* "The award and duration of a traditional alimony award 'is primarily predicated on need and ability.'" *In re Marriage of Pazhoor*, 971 N.W.2d 530, 543 (Iowa 2022) (citation omitted). We also consider other factors, including the length of the marriage. *See Gust*, 858 N.W.2d at 410–11.

Here, the parties' twenty-three-year marriage falls squarely within the length of marriage that "merit[s] serious consideration for traditional spousal support." *Id.* at 411. And Briana, though she has consistently worked in her professional field, does not appear to have ever worked full-time because the parties decided to prioritize her time at home with the children from the time she finished school. We find an award of traditional spousal support is appropriate, so we turn to determining an appropriate amount and duration.

Tim underestimates the difference between his income and that of Briana. Tim argues Briana could choose to work full-time instead of the 0.8 time she is currently contracted for, and she could work "all year long instead of just nine

months out of the year," to bring her earnings "equal to or greater than those of Tim." But this assumes without record support that Briana could increase to full-time during the school year—despite her credible testimony it was not available—and find full-time employment for just the summer at a similar rate of pay. And Briana noted the uncertainty surrounding continued employment with the area education agency—presumably given the recent legislative changes to the agency's structure and funding. We also recognize Tim is now reaping the rewards of consistent full-time work in his own field, with a higher salary and bonus potentials—made possible by Briana taking on the lion's share of work raising their children and not prioritizing her own career during the marriage the way Tim did.

Spousal support for the first three years at $1500 per month is reasonable given the difference between 0.8 and full-time work, Briana's lack of opportunity to move to full-time work with the employer she has had for the entire marriage, and the limited other employment opportunities in her field in the area. But we find she does have the earning capacity to become self-sufficient given her consistent employment history and education. So we limit the duration of the $1000 award to seven years after the first three years, for a total of ten years of spousal support. Consistent with the limitations originally imposed by the district court, if either party dies or Briana remarries before the ten-year period expires, Tim's spousal-support obligation will end.

## C. Property Valuation

Tim contests the district court's valuation of firearms, parts, tools, and two vehicles awarded to him. He also urges the court should have offset Briana's remaining student loans in the division of assets.

Briana estimated Tim had spent more than $21,000 on gun parts between 2020 and 2022, and there were still parts in the house when she moved out in 2023. She estimated Tim's guns and gun parts to be worth at least $8000. But, according to Tim, the gun parts were gone later that year, because he was buying them for other people and sold them for cost. Tim only claimed ownership of one ghost gun and six other guns and valued them at $2700. And he identified an additional thirteen guns in his possession as belonging to the children, worth more than $3600. Yet Briana produced copies of checks to Tim for guns for more than $500 and $900. The court determined $6000 was a fair value to assign all Tim's firearms and firearm parts.

Tim owns a significant amount of tools due to both his profession and his preferred hobbies—filling two large standing toolchests as well as several table saws and other power tools. Briana estimated the value of Tim's tools at $15,000. Tim testified he had many tools from before the marriage from gifts and for his schooling; he estimated their worth at $2500. The court described it as "quite an inventory" and noted "[n]either of the parties' evidence regarding tools is particularly convincing," ultimately setting a value at $8000.

Finally, two vehicles were distributed to Tim, and he disputes their valuation. The court assigned a 2005 minivan a value of $2240 and a 2009 SUV $4675. These values generally track Briana's valuations, which she supported with Kelley Blue Book valuations of similarly aged vehicles in "Fair" condition. Tim estimated their worth at $1500 and $500, respectively. A couple of weeks before trial when driving the minivan, Tim had a "tire fl[y] off and kick[ him] sideways." He opined "[i]t should be with the junkyard. It should have been replaced ten years ago." As

to the SUV, he testified it had not run for "three or four years" and was not worth more than scrap weight. Briana agreed it had not run for a few years and she was willing to scrap and salvage the vehicles. But neither party testified to a specific salvage value for either vehicle.

"Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence." *In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007). "Although our review is de novo, we ordinarily defer to the trial court when valuations are accompanied by supporting credibility findings or corroborating evidence." *Id.* We find the court's valuation of the guns and tools easily falls within the range of permissible evidence. In doing so, we recognize and decline to disturb the district court's credibility findings on this issue, including that no evidence regarding the tool valuation was "particularly convincing," that the court was "skeptical" of at least some of Tim's testimony (even he admitted at trial to being dishonest regarding the guns), and that the court believed "some [gun] parts disappeared without explanation." And although Tim testified the vehicles were worth less than the two amounts offered into evidence by Briana, he did not provide the court any competing evidence to support his estimate of their worth. Under the circumstances, we defer to the court's reliance on evidence in the record.

As to Briana's student loans, Tim argues "[p]art of Briana's student loans were incurred prior to the marriage" and "[t]here is no evidence before the court that Briana's student loans benefited Tim." We disagree, as Briana's education played a major role in her ability to significantly contribute to the family's support even with part-time employment. Nor does Tim specify which of Briana's student

loans were obtained before the marriage to set aside. More, Tim paid off his own premarital student loans during the marriage using marital funds. We affirm the court's decision not to offset Briana's student loans.

### D. Trial Attorney Fees

"The court has considerable discretion in awarding attorney fees" and "may consider expert fees in an award of attorney fees." *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 488 (Iowa 2012). We review the court's decision for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). "We reverse the district court's ruling only when it rests on grounds that are clearly unreasonable or untenable." *In re Marriage of Erpelding*, 917 N.W.2d 235, 238 (Iowa 2018) (citation omitted). Here, the trial court ordered Tim to "contribute $5000 to Briana's fees."

According to Briana, she incurred extra trial attorney fees due to Tim not returning the children from visitation on time, delayed discovery responses resulting in a motion to compel, and Tim telling the children his utilities were being turned off because of Briana. Briana requested Tim pay for all her attorney fees—around $20,000. Tim argues the court provided no justification for the award, and it was not fair or reasonable. Given the circumstances, we cannot say the district court's award of $5000 to Briana was an abuse of discretion, so we affirm.

### E. Appellate Attorney Fees

Briana requests $7392 in appellate attorney fees. Our considerations for discretionary appellate attorney fees include the requester's need, the other party's financial ability, and the merits of the appeal. *See Sullins*, 715 N.W.2d at 255.

Given lack of merit for most of Tim's arguments on appeal, we take a similar approach to the district court and award $1850 in appellate attorney fees to Briana.

**IV.     Disposition**

We modify the district court's decree to terminate Tim's obligation to pay traditional spousal support on July 31, 2034.  We affirm all other aspects of the district court's dissolution decree.  And we award Briana partial appellate attorney fees in the amount of $1850.  Costs on appeal are assessed to Tim.

**AFFIRMED AS MODIFIED.**